STEVENS (WICKS v.). See Case No. 17,616

## Case No. 13,413.

### STEVENS v. WILLIAMS et al.

[1 McCrary, 480;[1] 19 Am. Law Reg. (N. S.) 295; 1 Morr. Min. Rep. 566.]

Circuit Court, D. Colorado. July, 1879.

MINES —LODE OR LEDGE— APEX — FOLLOWING VEIN.

1. A vein, lode or ledge, within the meaning of the act of congress, is a mineral body of rock within defined boundaries in the general mass of the mountain.

[Cited in Iron Silver Min. Co. v. Cheesman, 116 U. S. 534, 6 Sup. Ct. 483; Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 394, 430, 12 Sup. Ct. 551.]

[Cited in Bullion, B. & C. Min. Co. v. Eureka Hill Min. Co., 5 Utah, 3, 11 Pac. 540; Illinois Silver Mining & Milling Co. v. Raff (N. M.) 34 Pac. 544.]

2. The top or apex of a vein is the highest point where it approaches nearest to the surface of the earth, and where it is broken on its edge, so as to appear to be the beginning or end of the vein. If a vein, at its highest point, turns over and pursues its course downwards, then such point is merely a swell in the mineral matter, and not a true apex.

3. Where there is a true apex within the surface boundaries of a claim, the claimant can follow the vein in its downward dip beyond his vertical side lines, and he may follow the vein beyond such side lines at any point where the apex is within his surface lines, even though his location for the full length of the claim be not along the line of such apex; and he is entitled to follow the same in its departure from the perpendicular, in any degree, until it reaches the horizontal.

[Cited in Consolidated Wyoming Gold Min. Co. v. Champion Min. Co., 63 Fed. 552.]

[Cited in Bullion, B. & C. Min. Co. v. Eureka Hill Min. Co., 5 Utah, 3, 11 Pac. 536.]

At law.

MILLER, Circuit Justice (charging jury). After a very long and patient investigation of the case, with the aid which eminent counsel have been able to give to you and to the court, we approach a point when you and the court must act in the decision of the

[1] [Reported by Hon. Geo. W. McCrary, Circuit Judge, and here reprinted by permission.]

questions presented in the case. It is a satisfaction to me to state, if my experience is of any value, that I have very rarely seen as many witnesses, in so important a case as this, where they have testified so frankly, and where I have been so perfectly convinced of their integrity. * * * And as this is my first case upon important mining matters,—a class of cases coming more rapidly into the courts than heretofore,—I hope that the miners will always deserve the character which I am happy to give them in this case, of being true and honest men in what they endeavor to state. There are some things, gentlemen, of which I propose to disabuse your minds before entering upon the real merits of the case. A great deal has been said about the immense value of the interests at stake, and I think counsel on both sides have intimated to you that your verdict may settle rights of property to a very large amount outside of the case now in controversy. That is quite a mistake; your verdict settles nothing in the world but the matter in controversy between these parties. Even the opinion which the court delivers, that, perhaps, may hereafter be used in similar cases as settling principles, but for which you are not at all responsible, may be and probably will be revised by the highest court of the country, the supreme court of the United States. So that in delivering this opinion, my Brother HALLETT and myself are not deciding principles finally which governs anybody's case, possibly not even this case. Therefore, do not be frightened; do not be alarmed; do not bring in any other verdict than what you would if this were a simple controversy between the owners of the Iron mine and the owners of the Grand View mine, for that is all there is in this case. The plaintiff has asked certain instructions here which I have refused, in regard to the testimony, and I regret that they should have been introduced into his prayer for instructions, but I will rule upon them so that he can get the benefit of them if he desires. I am asked by him to state that the patent which he has received from the United States for the Iron mine is conclusive that the sheet of mineral matter in question is a vein, within the meaning of the statute. I decline to give that instruction. Certainly, outside the vertical projection of the side lines of the plaintiff's patented ground, if the defendants can show that the mineral matter which is the subject of this controversy is not a vein they have the right to show it. Outside of the side lines of the plaintiff, projected perpendicularly downwards, defendants have the right, if they can, to show that the vein, or thing which is called a vein, is not a vein.

After disposing of that much of the preliminary matter, I now proceed to state to you what I understand to be the nature of this controversy. The plaintiff has a patent from the United States, which has been read to you, for a mine or lode of mineral matter, the

superficial area of which. is three hundred feet in one direction and fifteen hundred in another on the surface of the earth, as known and measured by the lines which have been pointed out to you and are called the end and side lines of the Iron mine. The act of congress on that subject says, that when such title or patent and such side and end lines cover the top or apex of a vein of mineral matter, if the party pursuing that vein in a downward direction, as he pursues it further, escapes from the perpendicular extension of these side lines, he may still follow that vein as long as he can find it, and so long as it is the same vein. That part of the statute is the source of this controversy. The plaintiff, acting upon that act of congress, has pursued what he calls his vein, has pursued it a very long distance, as shown by that incline on the map, which is the most continuous, outside of his side lines across the side lines of another claim and into the claim of the defendants. If it is a continuous vein of mineral matter, and if his side lines cover the apex or outcrop of that vein, and if those lines are extended in a proper direction across the shoot or course or strike of that vein matter, he has the right to pursue it. The defendants, commencing at another point on the surface of the earth and descending perpendicularly as shown on the map, have come to a point where their shaft intersects the incline which the plaintiff has made in the pursuit of his mineral, and the contest is for the mineral matter where these two shafts meet, so far as the defendants' claim covers, or may be supposed to cover it. Now I state to you in the first place, if that is a vein of mineral matter, within the meaning of the act of congress, and in the second place, if the plaintiff's side lines are laid along the course or shoot of that vein, and inclose its top, apex or outcrop, and if the plaintiff in the pursuit of that vein into the bowels of the earth, pursued it downwards continuously, he is right in this controversy, and he should obtain your verdict.

The defendants say they are entitled to your verdict upon three principal grounds: (1) They say that the mass of mineral matter which is the subject of this controversy is not a vein, lode or ledge, within the meaning of the act of congress; (2) that what the plaintiff claims to be the apex, or top, or outcrop of this lode is no such thing, but is a mere elevation of the general position of this sheet of mineral matter, and from that point it continues on a westward dip, and, therefore, this is not an apex but merely a swell in the mineral matter; and (3) that the plaintiff has not so located his side lines and end lines with reference to the strike or course of the mineral, as to entitle him to the benefit of that statute.

Now these are the three points to which your attention is to be directed, and about which I propose to lay down some matters of law which will govern you in the case. But before I proceed to give my own views in the matter, and because it will, perhaps, facilitate any exceptions that may be taken, I will read to you certain prayers for instructions asked by the defendants in this case, some of which I will give to you, others I will modify, and others I will refuse. The first one, which I think is sound law, is as follows: "In addition to the evidence of the title furnished by the patent, the plaintiff must show by a preponderance of evidence that he is the owner of a body of mineral on his patented ground; that such mineral constitutes a vein of quartz or other rock in place" (and there I want to say that by rock in place I do not mean merely hard rock, merely quartz rock, but any combination of rock, broken up, mixed up with minerals and other things, is rock, within the meaning of the statute, because it does not say common quartz rock alone, but it says "that such mineral constitutes a vein of quartz or other rock in place"); "that being such a vein it penetrates the land in controversy, known as the Grand View claim" (if it is such a vein and runs under the surface of the earth, if it goes to the perpendicular lines of the Grand View claim; that is what is meant); "that the top or apex of the vein is within the surface lines of the Iron lode location, and where it enters the land in dispute it does so in a downward course departing from a perpendicular." Counsel have inserted here that at the respective points where it leaves the Iron mine location, and where it enters the land in dispute, it does so in a "downward course, and departing at both said points from a perpendicular." I have cut out so much of that as says "that at the respective points where it leaves the Iron mine location." I think if the general course of that vein is a departure from the horizontal, that it covers the case. With the exception of striking out that single point, "that at the respective points where it leaves the Iron mine location," I give that instruction. Second: "And if these conditions are fulfilled it must also appear that the location of the Iron mine is laid upon the general course, or strike; that the vein mentioned departs from the plaintiff's location at a point on its general course within the patented side lines." That is correct. The long lines of the plaintiff's claim must be so laid, with regard to the general course or strike of the vein, that in pursuing it you pursue it to the end lines, or where it leaves the side lines within those end lines. Third: "Although the area of ground within the patented lines of the plaintiff extends fifteen hundred feet in a northerly and southerly direction, by three hundred feet in width, plaintiff is only entitled to so much of the Iron lode along its general course as is embraced within his side lines; and if the body of mineral within the patent deflects on its general course, so as to cross the side lines, plaintiff has no right to go beyond such lines to follow it. If, therefore, the supposed vein of quartz or rock in place, departs from a perpendicular in its downward

course, at any point on its course or strike outside of plaintiff's side lines, and then enters the land in controversy, plaintiff cannot by reason of this recover in this action." I refuse that for two reasons: If it means anything more than the language given in the previous instructions, I do not give it. In the second place, it is complex and confusing to the jury. I can hardly understand it myself, and therefore I presume you could not understand it better than I can. The fourth one I refuse. "In addition to the things already mentioned as essential to the plaintiff to recover in this action, the vein of quartz or rock in place" must be "one which in its descent into the earth is substantially vertical in its direction."--that is, straight down,—"which on leaving the side lines of the plaintiff and entering the land in dispute, departs from a perpendicular and not from a horizontal direction." I refuse that; if there is any departure from a horizontal direction in a downward course, it is sufficient. The sixth one is: "The 'top' or 'apex,' within the act of congress, is the highest end or termination of the vein, and this is so, even though at any intermediate point or points, where the vein is continuous, it rises higher than such highest end, it being essential to such 'top' or 'apex' that there be no vein continuing beyond it." I give that. It must be the end of the vein which approaches nearest to the surface, as I shall explain more fully in another part of the charge. That is the substantial meaning of it. The next, number seven, is: "In order to constitute a vein of quartz or other rock in place which will entitle the plaintiff to follow it into the land of another, it is not enough that there be a seam or crevice between rock in place filled with mineral, but the mineral contained between the rock in place must be of 'quartz or other rock.'" I have explained already to you, the meaning of other rock, that it did not mean solid rock necessarily, but it means any rocky substance containing mineral matter. "And unless plaintiff has shown by a preponderance of evidence, the contents of the supposed vein to be of 'quartz or other rock,' he cannot recover, for under the act of congress under which plaintiff claims, all forms of deposit excepting veins of quartz in rock in place, are placers." I give that instruction, but with the distinct understanding that all this substance between the porphyry and limestone, that has been explained to you, which contains mineral, —I mean which contains ore,—is rock in place. The eighth instruction: "Although the jury believe from the evidence that the plaintiff is the owner of a vein of quartz or rock in place, yet if such vein on its course toward the land in dispute, be interrupted for a considerable distance, then it ceases to be a lode or vein so as to give the plaintiff the right to pursue it into the adjoining land, and in such case the plaintiff cannot recover." I refuse that instruction. In the first place the evidence is uncontradicted—at least so little contradicted I would not dare to put that to the jury—that

that main incline has metallic ore in it from beginning to end, as far as it has been carried; and in the second place, the words "considerable distance," do not convey any accurate conception. In some cases a mile would be a "considerable distance," and in some cases, where a life depended on it, half an inch would be a considerable distance.

There is another matter asked by the counsel, which I think is too complex, and I refuse it upon other reasons. I shall, however, charge the jury upon the whole of that matter.

Now, gentlemen of the jury, as I make out the subject matters to be considered by you in this case, the first one of them for you to determine is, what is a vein, lode or ledge of mineral matter within the meaning of the statute, and in regard to that matter, I apprehend you will have no great difficulty in this case. The statute of the United States, in determining the terms on which its mineral lands shall be sold, used or occupied, has divided mineral lands, at least all that relate to precious metals, into two distinct classes: they are those which are called placer mines and those which are called veins, lodes or ledges of mineral matter in quartz or other rock in place. Now I do not know that I can better define what is a vein, lode or ledge to you, than has already been done by my associate on the supreme bench, Brother Field, whose learning on that subject is equal, perhaps, to that of any judge of the United States courts, and whose diligence and precision are equal to his learning. Without going over all that he says about it, most of which was read to you by Mr. Symes, I adopt and instruct you that a "continuous bed of mineralized rock, lying within any other well-defined boundaries on the earth's surface and under it, would constitute a lode, and that the term is used in the acts of congress as applicable to any zone or bed of mineralized rock, lying within boundaries clearly separating it from the neighboring rock. It is any class of deposits of mineral matter coming from the same source, impressed with the same forms, and appearing to have been created by the same process." I am also aided by my Brother Hallett, whose experience is greater than mine in this matter, and who has also given the definition of the word, which I propose to read to you as the law: "In general, it may be said that a lode or vein is a body of mineral or mineral body of rock, within defined boundaries in the general mass of the mountain." And I do not know a better or more comprehensive definition than that. I say to you, further, gentlemen, that the thinness or thickness of the matter in particular places does not affect its being a vein or lode; nor does the fact that it is occasionally found in the general course of this vein or shoot, in pockets deeper down into the earth or higher up, affect its character as a vein, lode or ledge. I say to you, further, that a total interruption of the ore matter, if the contact remains on each side, the limestone and porphyry are still preserved,

and the vein of mineral matter is found within in a short distance further on; pursuing that same contact. it is still a part of the same vein. In short, if there is a general and pervading continuance of this mineral matter with a casual and occasional interruption, but pursuing the same general course, bounded by the same rocky material above and below as far as you can trace that until it breaks off totally and is interrupted for a very large distance, it is a vein of rock or mineral matter. Now I think you will have no difficulty in applying these definitions, since the evidence here is almost uncontradicted that there is such a sheet of matter as is spoken of. All the witnesses agree that there is a substratum of limestone and a super-stratum of porphyry; all agree, even defendants' witnesses. that they come to a point where that contact is so narrow that only a sheet of paper could be got into it, but still it has the well preserved distinction—the porphyry above, the lime below, and, although in some instances to the south, some to the north, and some occasional spots in the levels, it is stated by defendants' witnesses, that no more vein matter has been found, yet you must. I think, come to the conclusion that on the whole, and taking the course on which this matter is in contact from the line of the plaintiff's location to the line of the defendants' location; taking the course of that large incline shaft, driven by the plaintiff from where he first discovered it to where it meets the defendants', it is for you to say from the testimony, not for me to find for you. But I can see no reason why you should not say there is a continuous vein of mineral from the opening shaft, the plaintiff's shaft, to the point where it reaches the Williams shaft. If that is true—if you find that to be true, why, notwithstanding these casual interruptions in various directions, notwithstanding the widening. the narrowing, the deepening and the shallowness of the vein, notwithstanding it has, in some places, acknowledged diversions down into the ground, still, if the miner is able to pursue and has been able to pursue it in the vein, notwithstanding these interruptions, you are to call it a vein, and treat it as a vein within the meaning of the act of congress.

The next point is, that it is denied that there is a top or apex to this ledge or vein, and that if there is such a one it is not within the side lines of the plaintiff's patent. Perhaps upon that point the defendants have mainly rested their case. I think that you will agree with me, as all the counsel agree and all the witnesses agree substantially, conceding that there is a vein, that the top or the apex of a vein, within the meaning of the act of congress, is the highest point of that vein where it approaches nearest to the surface of the earth, and where it is broken on its edge so as to appear to be the beginning or end of the vein. The word "outcrop" has been used in connection with it, and in the true definition of the word "outcrop," as it concerns a vein, is

probably an essential part of the definition of its apex or top; but that does not mean the strict use of the word "outcrop." That would not, perhaps, imply the presentation of the mineral to the naked eye, on the surface of the earth, but it means that it comes so near to the surface of the earth that it is found easily by digging for it, or it is the point at which the vein is nearest to the surface of the earth; it means the nearest point at wh'ch it is found toward the surface of the earth. And where it ceases to continue in the direction of the surface, is the top or apex of that vein. It is said in this case that the point claimed to be the top or apex is not such, because at the points where plaintiff shows or attempts to prove an interruption of that vein, in its ascent towards the surface, and what he calls the beginning of it, the defendants say that is only a wave or roll in the general shoot of the metal, and that from that point it turns over and pursues its course downwards as a part of the same vein, in a westerly or southwesterly direction. It is proper I should say to you. if the defendants' hypothesis be true, if that point which the plaintiff calls the "highest point," the "apex," is merely a swell in the mineral matter, and that it turns over and goes on down in a declination to the west, that it is not a true apex within the statute. It does not mean merely the highest point in a continuous succession of rolls or waves in the elevation and depression of the mineral nearly horizontal.

Now, gentlemen, I have but one more matter, and really I do not know that there is much to be said about that. The defendants maintain that the lines—the side lines—of the plaintiff's claim are so located in reference to the shoot or strike of the vein which they claim to pursue, that he has no right to pursue it at the point where this controversy exists. You must take all the evidence together, you must take the point where it ends on the south, where it ends on the north, where it begins on the west and is lost in the east, and the course it takes, and from all that you are to say what is its general course. The plaintiff is not bound to lay his side lines perfectly parallel with the course or strike of the lode so as to cover it exactly. His location may be made one way or the other, and it may so run that he crosses it the other way. In such event his end lines become his side lines, and he can only pursue it to his side lines vertically extended, as though they were his end lines; but if he happens to strike out diagonally as far as his side lines include the apex, so far he can pursue it laterally; if the vein projects beyond his side lines, then it is only a question as to the distance which he can include this vein within his side lines. which I don't see arises in this case at all; but that is for you to say.

Now, gentlemen, I have laid before you all that I think material for your judgment in this case. If you believe that that is the top or apex of the vein on which the plaintiff

has laid his claim; if you believe that is a vein within the meaning of the act; if you believe that is a vein under the circumstances and definitions which I have given you; if you believe that in pursuing that vein to the east, or slightly to the northeast, the plaintiff has followed substantially a continuous sheet of ore, although with occasional interruptions, occasional narrowings, occasional enlargements and occasional pockets, yet if it is substantially the same vein and sheet of ore, and he has followed it and found the defendant in possession in the line of his openings, the law is with the plaintiff. If you do not believe all of these propositions are established, the verdict will be for the defendants.

[For subsequent proceedings, see Case No. 13,414.]