# IRON SILVER MINING COMPANY *v.* CHEESMAN & Another.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued December 18, 21, 1885.—Decided January 25, 1886.

The act of Congress, § 2322 Revised Statutes, gives to the owner of a mineral vein or lode, not only all that is covered by the surface lines of his established claim as those lines are extended vertically, but it gives him the right

to possess and enjoy that lode or vein by following it when it passes outside of those vertical lines laterally.

But this right is dependent, outside of the lateral limits of the claim, upon its being the same vein as that within those limits. For the exercise of this right it must appear that the vein outside is identical with and a continuation of the one inside those lines.

The acts of Congress use the words vein, lode, or ledge as embracing a more or less continuous body of mineral, lying within a well-defined boundary of other rock, in the mass within which it is found, or, it may be said, to be a body of mineral, or a mineral body of rock within defined boundaries in this general mass.

A vein is by no means always a straight line or of uniform dip or thickness, or richness of mineral matter, throughout its course. The cleft or fissure in which a vein is found may be narrowed or widened in its course, and even closed for a few feet and then found further on, and the mineral deposit may be diminished or totally suspended for a short distance, but, if found again in the same course with the same mineral within that distance, its identity may be presumed.

But if the mineral disappears, or the fissure with its walls of the same rock disappears, so that its identity can no longer be traced, the right to pursue it outside of the perpendicular lines of claimants' survey is gone.

Whether any deposit of mineral matter, about which a contest arises before a court or jury, has been shown to belong to one of these veins within a prior location, is a question to be decided by the application of these principles to all the evidence in the case.

When the court instructs the jury in a manner sufficiently clear and sound as to the rules applicable to the case, it is not bound to give other instructions asked by counsel on the same subject, whether they are correct or not.

This was an action in ejectment to recover possession of mineral lands in Colorado. The facts which make the case are stated in the opinion of the court.

*Mr. Walter H. Smith* and *Mr. G. G. Symes* for plaintiff in error.

*Mr. C. S. Thomas* for defendants in error. *Mr. T. M. Patterson* was with him on the brief.

Mr. Justice Miller delivered the opinion of the court.

The Iron Silver Mining Company brought its suit in the nature of an action of ejectment against Walter S. Cheesman, Walter S. Clarke, and Thomas Bennett, to recover possession of a part of a vein or lode of mineral deposit, the right to which

it asserted under a patent from the United States.   The action was commenced in the Circuit Court of the United States for the District of Colorado.   The defendants denied the title of the plaintiff to the vein at the point in controversy, and though they did not assert a claim under a patent, they did show such proceedings under the mining laws of the United States as justified their possession, unless plaintiffs had a better right.

There were three trials by jury in the case.   The first resulted in a verdict in favor of the defendants.   That was set aside and a new trial ordered under the statute of Colorado, which gives the unsuccessful party in such actions an absolute right to this second trial.   The second trial failed by reason of a divided jury; and on the third trial the verdict was again for the defendants.   It is to review the judgment rendered on this verdict that the present writ of error is taken.

The plaintiff relies on the accepted proposition, that the owner of a mineral vein covered by the superficial lines of his claim may not only pursue that vein perpendicularly within those lines, but may, when the vein passes beyond the side lines of this claim or survey, pursue that vein outside of a line drawn vertically from the superficial side lines, as far as the vein extends.

In pursuit of what is asserted to be a continuation of the vein on which its patent is located, but outside of the perpendicular of its side lines, the Iron Silver Mining Company, owning what it called the Lime lode and mining claim, came into collision with defendants, who were working the lode which they called the Smuggler.   Of course the defendants, being in possession, could only be deprived of that possession by virtue of a superior title in the plaintiff.   As the exterior surface lines of plaintiff's patent, when extended vertically to the plane of this deposit, did not include the piece of mineral which is the subject of this controversy, plaintiff could only recover by showing that this was a part of the same vein which his patent did cover, which, passing from his side lines, was such a continuation of that vein as gave the right to pursue it.

It seems to have been conceded throughout the long trials in the case, that if plaintiff could establish the sufficiency and con-

tinuity of his Lime lode, so as to make the defendants' Smuggler lode identical with it, he was entitled to recover; and on the other hand, if he did not do this, he had no right to the Smuggler lode, which was in that case a different lode, outside of the vertical extension of plaintiff's side lines.

This involved the consideration of the true definition of a lode or vein as used in the acts of Congress on the subject, and under what circumstances of continuity and of interruption a vein may be followed in the surrounding rock in which it is found, so as to preserve its identity.

On this subject a large mass of testimony was given to the jury, and to this point the charge of the court was directed.

If there were exceptions taken to the admission of any of this evidence, or to the refusal to admit other evidence, no assignment of error is based upon such admission or refusal; but the errors assigned relate solely to the charge given by the court to the jury, and to the refusal to give twenty-eight several instructions asked by the counsel of plaintiff.

As we have already said, the only question for the jury, the one on which their verdict depended, was whether plaintiff had identified the Lime lode or vein, and traced it continuously from its connection, inside of the lines of its patent, as the same vein in which defendants were working under the name of the Smuggler lode.

As the charge of the court was very full and clear as to the rules of law by which this was to be determined, there is no occasion to inquire into the soundness of each of the twenty-eight propositions of plaintiff on the same subject. If any of these propositions were covered by the charge made by the court, there was no obligation on the judge to repeat it in the language of counsel. If there was a conflict in the law as laid down by the court and that requested by plaintiff's prayer for instructions, the correctness of the charge of the court is raised by the exceptions to that charge, and can be best considered in these exceptions. *Clymer* v. *Dawkins*, 3 How. 674, 689; *Mills* v. *Smith*, 8 Wall. 27; *Indianapolis & St. Louis Railroad Co.* v. *Horst*, 93 U. S. 291; *Continental Improvement Co.* v. *Stead*, 95 U. S. 161.

The act of Congress which confers the right under whic1 plaintiff claims is in the following language of the Revised Statutes :

"Sec. 2322. The locators of all mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and, assigns, where no adverse claim exists on the tenth day of May, eighteen· hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations, not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward 'as to extend outside the vertical side lines of such surface locations.   But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof. as lie between vertical planes drawn downward, as above described, through the end lines of their locations, so continued in their own direction tha such planes will intersect such exterior parts of such veins or ledges.   And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another."

It is obvious that the vein, lode, or ledge of which the loca, tor may have "the exclusive right of possession and enjoy-ment" is one whose apex is found inside of his surface lines extended vertically; and this right follows such vein, though in extending downward it may depart from a perpendicular and extend laterally outside of the vertical lines of such sur-face location.

What constitutes a lode or vein of mineral matter has been no easy thing to define.   In this court no clear definition has been given.   On the circuit it has been often attempted.   Mr. Justice Field, in the *Eureka Case,* 4 Sawyer, 302, 311, shows

that the word is not always used in the same sense by scientific works on geology and mineralogy, and by those engaged in the actual working of mines. After discussing these sources of information, he says:

"It is difficult to give any definition of the term as understood and used in the acts of Congress which will not be subject to criticism. A fissure in the earth's crust, an opening in its rocks and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to a lode in the judgment of geologists. But, to the practical miner, the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock lying within any other well-defined boundaries on the earth's surface and under it, would equally constitute, in his eyes, a lode. We are of opinion, therefore, that the term as used in the acts of Congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock."

This definition has received repeated commendation in other cases, especially in *Stevens* v. *Williams*, 1 McCrary, 480, 488, where a shorter definition by Judge Hallett, of the Colorado Circuit Court, is also approved, to wit: "In general it may be said, that a lode or vein is a body of mineral, or mineral body of rock, within defined boundaries, in the general mass of the mountain."

This lode, ledge, or vein, which may thus be possessed and enjoyed outside of the limits of the surface side lines extended vertically, must be the same vein or lode on the apex or outcrop of which the claim of the party has been located. He can only go outside of this imaginary perpendicular wall to possess or enjoy a vein which, being *his* inside of that artificial line, he has the right to follow or pursue in its extension outside of these lines. The identity of the vein is, therefore, essential to his right to its possession there.

Now, a vein containing the precious metals is by no means always a straight line of uniform dip, or thickness, or richness of mineral matter throughout its course. Generally, the veins

are found in what, when the mineral is taken out of them, constitute clefts or fissures in the surrounding rock, with a well-defined wall above and below of different kinds of rock; as porphyry on one side, above or below, and limestone on the other.

So long as these enclosing walls can be distinctly and continuously traced, and the mineral matter of the same character found between them, there can be no doubt that it is the same vein. But sometimes the cleft between the enclosing rocks, called in mining parlance the country rock, diminishes so as to be scarcely perceptible. Sometimes for a short distance the fissure disappears entirely and again is found distinctly to exist a little further on. Again it is seen that, though the underlying and superposing country rock is there, the mineral deposit ceases to be found, but, following the fissure, it reappears again very soon.

It also happens that both fissure and mineral come to an end and are found no more in that direction, or, if found, so far off, or so deflected from the original line as to constitute no part of that vein.

Of course it is sometimes easy to see that it is the same vein all through. It is also easy to see in some instances that the vein is run out; is ended.

But there are other cases of a class of which that before us is one, where it is a matter of extreme difficulty to lay down such rules for the guidance of the jury as will best aid them in arriving at a just verdict.

We are not able to see how the judge who presided at the trial of the case could have better discharged this delicate task than he has in the charge before us to which the exceptions are taken, and we give here verbatim that part of it relating to this point, as found in the bill of exceptions:

"Upon the evidence before you, these parties are to be regarded as owning the surface of the land by them respectively claimed, and all that rightfully goes with the surface under the law. No question is presented as to the right of the plaintiff to the Lime location. Holding by patent from the Government, the plaintiff must be regarded as the owner of that claim,

and all lodes and veins existing therein. The statute gives the owner of a lode, the one who may locate it at the top and apex, the right to follow it to any depth, although it may enter the land adjoining. And if the Lime location was made on a lode or vein which descends from thence into the Smuggler location, the right of the plaintiff to follow the lode into the Smuggler ground and to take out ore therefrom cannot be denied. Thus, the principal question for your consideration is, whether there is a lode or vein in the Lime location which extends from that claim into the Smuggler claim? If a lode is found in that claim, all the evidence tends to prove that the top and apex of such lode is in that claim. There is no room for controversy on that point. To determine whether a lode or vein exists, it is necessary to define those terms; and, as to that, it is enough to say that a lode or vein is a body of mineral, or mineral-bearing rock, within defined boundaries in the general mass of the mountain. In this definition the elements are the body of mineral or mineral-bearing rock and the boundaries; with either of these things well established, very slight evidence may be accepted as to the existence of the other. A body of mineral or mineral-bearing rock in the general mass of the mountain, so far as it may continue unbroken and without interruption, may be regarded as a lode, whatever the boundaries may be. In the existence of such body, and to the extent of it, boundaries are implied. On the other hand, with well-defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode. Such boundaries constitute a fissure, and if in such fissure ore is found, although at considerable intervals and in small quantities, it is called a lode or vein. To maintain the issue on its part, the plaintiff must prove that a lode as here defined extends from the Lime to and into the Smuggler claim.

" Reverting to that definition, if there is a continuous body of mineral or mineral-bearing rock extending from one claim to the other, it must be that there are boundaries to such body and the lode exists. Or if there is a continuous cavity or opening between dissimilar rocks in which ore in some quantity and value is found, the lode exists. These propositions are cor-

relative and not very different in meaning, except that the first gives prominence to the mineral body, and the second to the boundaries.

" Proof of either proposition goes far to establish a lode, and it may be said without proof of one of them a lode cannot exist. The proposition of the plaintiff is that the evidence before you shows that a lode exists in the ground in controversy as already defined. The defendants deny that proposition, and the case turns on that question. They concede that there is, in the territory open by the works, ore in detached masses or fragments, but so intermingled with the enclosing rocks that it cannot be regarded as a continuous body, or as marking the line of a lode or vein. All that has been said by witnesses about rock in place is valuable only as it tends to prove or disprove the existence of a crevice or opening extending from one claim to the other. Excluding the wash, slide, or debris on the surface of the mountain, all things in the mass of the mountain are in place. A continuous body of mineral or mineral-bearing rock, extending through loose and disjointed rocks, is a lode as fully and certainly as that which is found in more regular formation; but if it is not continuous, or is not found in a crevice or opening which is itself continuous, it cannot be called by that name. In that case it lacks the individuality and extension which is an essential quality of a lode or vein. Recognizing this, the plaintiff has given evidence to establish the existence of porphyry and lime in regular order with an opening between them, filled with vein matter.

" The defendants sought to show that the ground is broken and disjointed, and the several parts so intermingled that no lode can extend from one claim to the other.

" It is a question to be decided by the weight of testimony rather than the number of witnesses; upon the effect which the testimony has on your minds, accepting that which seems to you to be worthy of belief and rejecting the other. And that I believe, gentlemen, is the one and the only question in the case. " If you find it affirmatively, of course you will return your verdict for the plaintiff, and if in the negative, you will find for the defendants.

" And to so much of said charge as reads as follows: 'But if it is not continuous or is not found in a crevice or opening which is itself continuous, it cannot be called by that name. In that case it lacks the individuality and extension which is an essential quality of a lode or vein.' To which plaintiff's counsel then and there excepted."

If the language here excepted to stood alone it would be correct, though possibly too general or exclusive. Certainly the lode or vein must be continuous in the sense that it can be traced through the surrounding rocks, though slight interruptions of the mineral-bearing rock would not be alone sufficient to destroy the identity of the vein. Nor would a short partial closure of the fissure have that effect if a little farther on it recurred again with mineral-bearing rock within it. And such is the idea conveyed in the previous part of the charge. " On the other hand," said the judge, " with well defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode. Such boundaries constitute a fissure, and if in such fissure ore is found, *although at considerable intervals and in small quantities,* it is called a lode or vein."

The charge seems to us to be as favorable to plaintiffs as the principles we have laid down would justify.

We find no error in the record, and the judgment of the Circuit Court is therefore

*Affirmed.*