BUTTE & BOSTON MINING CO., Appellant, *v.* SOCIETE
ANONYME DES MINES DE LEXING-
TON, Respondent.

[No. 1,080.]

[Submitted April 11, 1899.  Decided July 24, 1899.]

*Mines and Mining Claims—Extralateral Rights—Continuity
and Identity of Veins—Instructions—Appeal—New Trial.*

1.  In order that a vein may be followed extralaterally, identity throughout is essential, and the vein must be continuous; but the continuity may be interrupted, provided the interruption does not prevent the tracing of the vein through the fissure as geologically identical.
*Obiter:*  It is a question of fact, to be decided by the jury subject to general rules, whether there is that essential identity and continuity by which the vein can be traced through the surrounding rocks.
2.  Where the court, in a charge, has correctly defined a vein, and indicated that, in order that a vein may be followed extralaterally, it must be the identical vein throughout, it is not error to place stress on the physical continuity, and to neglect to charge as fully in regard to the other elements of identity, when no charge is requested.
3.  A charge that veins are permanently separated, and cannot be followed as the same vein, when, in order to connect them, it is necessary to pass through a considerable distance of rock showing no elements of a vein, where there are neither minerals, walls, nor seams, is not erroneous, as being practically a charge that the jury must reach a certain conclusion as to the continuity of the vein.
*Obiter:*  It is the right of a jury to draw their own conclusions of fact from the evidence, and the court must avoid language which "virtually" decides facts, and withdraws their determination from the consideration of the jury.
4.  In a charge that, if no evidence of a vein appear for any considerable distance, the veins are not identical, the use of the word "considerable" is not objectionable as being indefinite.
5.  The court in its instructions should not assume the existence of a fact in controversy.
6.  *Quære:*  Whether, under the conditions as presented herein, the purchaser of a portion of a mining claim must follow along a plane of the end line of the claim drawn down at the point of departure of the vein from the conveyed premises, or must follow the plane of the end line of the conveyed premises which may cross the vein.
7.  Where the court sustained a motion for a new trial, and did not expressly exclude the ground that the verdict was against the evidence, the ruling will be sustained on appeal, where there appears t o be a conflict of evidence.

*Appeal from District Court, Silver Bow County; John J.
McHatton, Judge.*

Action by the Butte & Boston Mining Company against the

Societe Anonyme des Mines de Lexington.    From an order granting a new trial after a judgment for plaintiff, it appeals. Affirmed.

*Mr. John F. Forbis,* and *Mr. Louis Marshall,* for Appellant.

In granting a new trial upon errors and instructions Nos. 9, 10, and 11, which are treated together, the lower court seemed to think that such instructions were erroneous; in the first place because they laid down the rule that continuity and not identity of a vein is the test of the right to follow the vein from one's ground under that of another, and secondly, that these instructions infringed the right of the jury by discussing the evidence.

Upon the first question, we do not think, either identity or continuity the sole test of the right to pursue the vein on its dip.    The vein might be apparently continuous and yet it might be proved to a mathematical certainty that it was not throughout one identical vein.    Faults or slips might set one part of one vein so near another vein that they would be practically continuous, and yet we should not think that one would be allowed to follow one to its termination, and then continue upon the other, provided, a lack of identity was clearly established.

In the next place, identity in itself will not constitute the right to follow a vein wherever it may go.    As long as the vein is absolutely continuous there is no question as to the right to pursue it on its dip, even though it may vary in size and in richness or the character of its filling.    But when the vein is once intercepted and its parts separated, then there comes a nice question as to how much separation will constitute a lack of continuity.    In many cases veins have been broken by faults, and the upper part carried downward, and subsequently erosions have exposed an apex for the lower part of the vein.    Under such circumstances we have two apexes to different parts of the same identical vein.    When we undertake to follow down upon the faulted part we find

that it has no continuity but stops abruptly when it comes to the fault line, whereas the bottom of the vein proceeds down regularly and is uninterrupted by that particular fault or slip. Now it is possible that a location, and a valid location, may be made upon either of these apexes or veins. It may be proved conclusively to a geological mind that they are or were identical. We do not suspect that any court would hold that on account of their identity a locator of one could claim the other by reason of their identity.

It often happens, also, that slips in the earth's crust separate the parts of a vein to a great distance, so far, indeed, that a great deal of development is necessary to prove the identity, and without which development the identity would not be suspected. Under such circumstances it seems to us illogical to hold that he who has located a fragment of a vein —the top is generally a fragment—can pass into the possessions of another and take the substantial part of the vein, by simply proving the identity.

Usually if we find the veins continuous, or nearly so, in their downward course, we very naturally conclude that the vein is not only continuous, but identical, and the miner is not questioned closely as to identity so long as he has continuity. By the word continuity we do not mean to be understood as claiming that the vein must be absolutely continuous without a break or that the walls of the vein must at all places match exactly. By following the fault line upwards, if work is done upon the upper part of the vein, it is usually very easy to trace the connection between the two parts of the vein. In and along this fault line there is usually that character of material called drag, which is identical with the character of material in the vein at the point of its interruption. Usually the distance to be followed along this fault line is very short and the miner has no difficulty whatever in going from one part of the vein to the other, and identifying his property, and at the same time having what may be called a continuous vein. In such matters we quite agree that the question is one for the jury, under proper instructions of the court.

But we submit that without continuity, geological or other-wise there is absolutely no extra lateral right. Continuity may not be the only test of identity, but it is the only test of. the right to pursue veins on their dips, and that continuity must be determined by the facts in each case, and those facts should be submitted to a jury, or to the court, if the case be tried without a jury.

Our contention then is, that there must be both identity and practical continuity. Eliminate either of these characteristics and the right to follow the vein is lost. Where the question of continuity is in doubt, identity goes a long ways to establish it, but under any and all circumstances, in order to establish the right to pursue the vein on its dip there must be both identity and continuity.

The instructions complained of are taken almost bodily from the decisions of the Supreme Court of the United States; *Iron Silver Mining Co.* v. *Cheesman*, 116 U. S. 529. The lower court insists that these instructions, although they may be correct, were given under different conditions than arise in the case at bar. We cannot understand the point of the lower court in that respect, for a consideration of the case will show that both turn upon the questions of identity and continuity. The question in both cases was whether the party might follow a vein in his ground into that of another, and the almost identical words used in the instructions in this case were used in the instructions in the case in the Supreme Court of the United States. In fact, the instructions in this case were copied from the instructions in that, with such alteration as was necessary to fit the case. Therefore we see no reason why the instructions, if correct in one case, should not be given in another of like character. (Eureka case, 4 Sawyer 302, 311; *Cheesman* v. *Shreve*, 40 Fed. 787; *Stevens* v. *Williams*, 1 M. R. 557; *Leadville Min. Co.* v. *Fitzgerald*, 4 M. R. 380–387; *Iron Silver Min. Co.* v. *Cheesman*, 9 M. R. 552; *Hyman* v. *Wheeler*, 29 Fed. 347, 15 M. R. 519; 2 Lindley on Mines, Sec. 615, see also Sec. 866, p. 1123; *Iron Silver Min. Co.* v. *Mike & Starr Co.*, 143 U. S. 404; Barringer and

Adams on Mines and Mining, 438; *Iron Silver Min. Co.* v. *Murphy*, 3 Fed. 368, 1 M. R. 584.)

There are two reasons why the court should not have granted a new trial upon Instruction No. 19: First, because it correctly stated the law; and, secondly, because if erroneous, it could have had no effect upon the verdict.

1. It will be observed that this instruction refers to the right to follow upon the dip of a vein along a plane drawn through the end line of the conveyed property. The question before the court was whether the party should follow along a plane of the end line of the claim, drawn at the point of departure of the vein from the conveyed premises, or whether he should follow the plane of the line of the conveyed premises, which crosses the vein.

When we submitted this instruction to the court we were very doubtful as to its correctness, and were much surprised when it was given. But the question being an open one, could not be preserved in any other way but by asking the court to instruct the jury as it did in this instruction. We have never believed the doctrine announced in the instruction to be a correct one. It has always been our view that the end line of a claim should determine the dip of the vein taken at any point along the vein, and that when one purchased a portion of a claim, that he acquired only so much of a vein on its dip as he has apex at the surface, and that the dip of a vein is to be determined by the course of the true end lines of the claim.

However, recently, the judge who reversed the present case, acting as an attorney in another case, insisted upon a different ruling, and thereupon procured a Federal judge to render a decision upholding the correctness of Instruction No. 19, given in this case. If that opinion is correct, Instruction No. 19 correctly states the law. We submit the matter to the court as to which view of the law is correct. (*Boston & Montana Con. C. & S. M. Co.* v. *Montana O. P. Co.*, 89 Fed. 529.)

2. Under no circumstances should the court have ordered

a new trial upon Instruction No. 19, whether erroneous or not. The instruction was important only in event that the apex of the vein in question should be found within defendant's ground. There was a divergence of the two lines in question, which left a small wedge of ground, which, under Instruction No. 19, would belong to the plaintiff, whether the apex was north or south of the dividing line between the parties.

The jury, however, found that the vein was entirely south of the dividing line, and consequently all belonged to the plaintiff. Therefore, the entire importance of this instruction was destroyed by a finding of the jury. If the correct instruction, assuming No. 19 to be incorrect, had been given, the same result would have followed. (Hayne on New Trials and Appeals, Sec. 286; *Fort Scott W. & W. Ry. Co.* v. *Jones,* 28 Pac. Rep. 978, S. C. 48, Kans. 51; *Clark* v. *Lockwood,* 21 Cal. 221, 222; *Lafontaine* v. *Green,* 17 Cal. 294; *Atchison T. & S. F. Ry. Co.* v. *English,* 38 Kans. 110; *City of Kinsley* v. *Morse,* 40 Kans. 577; *Ellwanger* v. *Fish,* 60 N. Y. 651.)

*Mr. W. W. Dixon and Mr. John W. Cotter,* for Respondent.

The first error alleged by appellant is that the court, in granting the motion for a new trial, held that instructions Nos. IX, X and XI, which were properly treated together, did not correctly state the law, and were erroneous.

Respondent does not here care to dispute or question the definition of a vein or a lode given in these instructions. The definitions given by Mr. Justice Field and Judge Hallett have frequently been approved as correct in relation to the facts in the particular cases to which they were applied. But it may be noted, in the case of *Iron Silver Mining Company* v. *Cheesman,* 116 U. S. 529, so much relied upon by appellant, that the Supreme Court of the United States used, on page 533, the following language:

"What constitutes a lode or vein of mineral matter has been

no easy thing to define. In this court no clear definition has been given. On the circuit it has been often attempted.''

Nor, so far as respondent is aware, has the Supreme Court of the United States yet attempted to give a general and comprehensive definition of what constitutes a lode or a vein.

In instructions numbers IX, X and XI, now under consideration, it will be noticed that the question of continuity is made the sole and exclusive test of the right to pursue the vein on its dip, while the question of identity, which, we claim, is of infinitely more importance, is entirely ignored.

The question in dispute in this case was a plain one. Was the apex of the vein from which defendant took the ore in controversy within the surface boundaries of the portion of the Wappelo Lode Claim owned by the defendant, or within the surface boundaries of the portion of the same owned by the plaintiff? In other words, was the vein from which the ore was extracted identical with and the same vein, the top or apex of which was found in defendant's ground, or was it the same vein and identical with any vein, the top or apex of which was within plaintiff's ground?

The court below, in the instructions under consideration, lays no stress whatever upon identity as a necessary element in the right to follow a vein on the dip. It uses repeatedly the word ''continuity,'' and gives that as being the only test of a right to follow a vein. The words used are ''continuity'' and ''continuous.'' According to these instructions, if the continuity was broken, no matter for how small a distance, the right to follow the vein was lost. Continuity was made the sole and only test of this right. Indeed, so far did the Court go, in these instructions, that he told the jury, in instruction number XI, that ''if it becomes necessary in order to connect two separate and distinct portions of a vein, to pass for any considerable distance through country rock, having none of the elements of a vein, and through which intervening space there is neither mineral nor walls or seams to be followed, then it may be concluded that the veins are permanently separated, and one cannot be followed from the other through the intervening space into the ground of another.''

Here the Court, although admitting that the two detached portions were parts of the same vein, virtually tells the jury that they could not be followed upon the dip. The Court, in effect, told the jury that the identity of the two portions had nothing whatever to do with the right to follow the vein, but that continuity was the only test.

The same theory runs through and is expressed by all these instructions. We do not believe that any authority of the courts sustaining such a position can be found.

The case of *Iron Silver Mining Company* v. *Cheesman*, 116 U. S. 529, and the opinion of the United States Supreme Court in that case, is the one mainly relied upon by appellant to justify the instructions under consideration, and it is said that such instructions were taken almost bodily from the opinion in that case. There is, however, much more in that case than is contained in the instructions, and much is said which, taking the opinion as a whole, gives a very different meaning and effect to the decision of the Court.

It may be said here, in passing, as was well said by the judge below, in his opinion granting a new trial, that in the United States courts, where there is no restriction upon judges as to commenting to juries upon the matters in evidence, instructions of the court can be applied much more exactly to the questions arising in each particular case, and the judges are not obliged to lay down general propositions of law applicable to conditions or facts in every case. We think, therefore, that instructions of judges of the United States Courts in cases of this character should not be given too extensive or general an application, or taken as establishing the law in cases where the facts are entirely different.

Under our state system of practice, however, the court is forbidden to express to the jury its opinion upon the facts in the case, or to assume as proven any facts which are in controversy between the parties.

We submit that the Cheesman case can in no way be tortured into an authority that continuity is the only test of a right to follow a vein on the dip, and that identity is in no way to be considered.

In 2 Lindley On Mines, section 615, page 771, it is said:

"A vein to be followed upon the dip must be continuous only in the sense that it can be traced by the miner through the surrounding rocks.

"The occurence of intrusive dykes, faults, and casual displacements do not destroy the legal continuity *or identity* of the vein." (*Stevens* v. *Williams*, 1 Morrison Min. Rep. 557.) Appellant's counsel claim the instructions are legal definitions, and do not comment on the evidence at all. There is no doubt but what the court, under our system of practice, has a right to define legally matters in the case calling for a definition, but it has no right, where it is the duty of the jury and their right to consider all the evidence in the case in coming to a conclusion, to tell them that they must consider only one of several facts in evidence in arriving at their verdict. That is just what was done in this case, and in particular in instruction number XI, where the court told the jury that if they found that two portions of a vein were separated for a considerable distance, they might conclude that the veins were permanently separated, and that one could not be followed to the other through the intervening space of the ground of another.

We do not understand that the prohibition against a court's discussion of the evidence is confined to preventing the court from giving the jury its own views upon the facts. The court must leave the jury entirely free to pass upon the facts untrammeled by its opinion, or by any assumption upon the part of the court that matters in controversy are proved or established, or that any particular evidence or condition which is controverted establishes a particular fact. (*Wastl* v. *Mont. U. Ry. Co.*, 17 Mont. 213; *Knowles* v. *Nixon*, 17 Mont. 473.)

That Instruction XIX does not correctly state the law, there can be no doubt; appellant's counsel admit it themselves.

But appellant claims that notwithstanding Instruction XIX was wrong, it could have had no effect upon the verdict. It seems to us it is to be considered what effect this wrong instruction may have had upon the jury in arriving at the con-

clusion that the apex of the vein was in the plaintiff's ground. It would be a dangerous precedent to establish for a court to say that wrong instructions to a jury do not vitiate the verdict, because, as it turned out, they found certain facts which might possibly render the instruction immaterial.

It was a very material matter in this case as to whether or not the ore extracted by defendant was or was not taken from between certain planes drawn downward through the vein, and Instruction XIX, in undertaking to fix those planes, certainly lead the jury astray in a material matter in their investigation by prescribing an incorrect rule. And what effect this wrong instruction may have had upon the jury, both in the determination of this and other issues in the case, neither the court below, nor this Court, can now ascertain.

Where error is shown, injury is presumed unless the contrary appears affirmatively. (Hayne on New Trial and App., Sec. 287; *Kelly et al.* v. *Taylor et al.*, 23 Cal. 11, 15.)

**MR. JUSTICE HUNT** delivered the opinion of the court.

ACTION to recover the value of ore taken from a vein beneath the surface of that portion of the Wappello lode claim owned by plaintiff (appellant.) The Butte & Boston Mining Company, plaintiff and appellant, owns the south and west portions of the Wappello lode claim, while the Societe Anonyme des Mines de Lexington, respondent here, owns the northeast portion, as indicated by the diagram accompanying this opinion. A. J. Davis formerly owned the Wappello, and both plaintiff and defendant derive title from him; the conveyance to defendant of its portion having been prior to the conveyance of plaintiff's portion to it. Defendant entered beneath plaintiff's premises and extracted ores; hence the principal question involved was whether the vein from which the defendant took the ores had its apex within the surface boundaries of that portion of the Wappello lode claim owned by the defendant, or had its apex within the surface boundaries of that portion of the Wappello owned by the plaintiff. Inci-

dental to the determination of this issue was the question of the amount of damages.

The case was tried to a jury. The evidence was conflicting, many experts for plaintiff claiming that the apex of the vein from which the ores were extracted was in plaintiff's ground, and that it was wholly disconnected with any vein in defendant's ground, while an equal number of expert witnesses called by the defendant testified that, in their opinion, the

apex of the vein was in the defendant's ground. Elaborate instructions were given to the jury, who found for the plaintiff for $125,000 damages. The defendant moved for a new trial, based upon errors in the instructions the court had given to the jury, and insufficiency of the evidence to justify the verdict and findings of the jury. The court granted the motion for a new trial, and from the order granting such motion the plaintiff appeals to this court.

To illustrate the theory of the district judge, we give verbatim those portions of his charge which, upon review by motion for a new trial, he held to be incorrect statements of the law:

### INSTRUCTION 9.

"You will understand, however, that a fragment or portion

of a vein, although it may be sufficiently identified or recognized, will not in itself give its owner the right to enter upon the ground of another and extract ore from other portions of the same vein; for if the two portions of the vein, although once together and forming the same vein, have become separated and as so separated have formed distinct veins, and the original connection has been so broken or obliterated that such connection cannot any longer be followed, then the owner of the portion having the apex cannot enter through such disconnected portions into the land of another."

### Instruction 10.

"Plaintiff and defendant both derive title to the respective portions of the Wapello claim owned by them from the same source.

"It is conceded that the ore, to recover pay for which this suit is brought, was mined and extracted by defendant from beneath the surface of that portion of the said Wappello lode claim owned by the plaintiff.

"Defendant contends that the apexes of two veins lie in that portion of said Wappello lode claim owned by it, and that it has followed the north one of the said veins on its southerly dip into and under that portion of the said Wappello lode claim owned by the plaintiff, and extracted and stoped said ore from said vein, the top or apex of which is in defendant's ground.

"The plaintiff contends that defendant did not and cannot follow said vein continuously from defendant's said ground into and beneath the surface of plaintiff's ground, and to where the said ore was stoped out, and that said ore was taken by the defendant from a vein, the top or apex of which lies within plaintiff's ground.

"Now, to properly understand the respective rights of plaintiff and defendant, it is necessary to define what a vein or lode is. And as to that it is enough to say that a vein or lode is a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain. In this definition the elements are;—the body of mineral or mineral-

bearing rock and the boundaries.    With either of these things
well established, very slight evidence may be accepted as to
the existence of the other.    A body of mineral or mineral-
bearing rock in the general mass of the mountain, as far as it
may continue unbroken and without interruption, may be re-
garded as a lode, whatever the boundaries may be.    In the
existence of such body, and to the extent of it, boundaries are
implied.    On the other hand, with well defined boundaries,
very slight evidence of ore within such boundaries will prove
the existence of a lode.    Such boundaries constitute a fissure,
and if in such fissure ore is found, although at considerable
intervals and in small quantities, it is called a 'lode' or 'vein.'

''To maintain the issue on its part, the defendant must prove
that a lode, as here defined, extends from that portion of the
Wappello ground owned by it into and under that portion of
the said Wappello ground owned by plaintiff.

''Reverting to the above definition, if there is a continuous
body of mineral or mineral-bearing rock extending from de-
feudant's ground into and under the ground of plaintiff, it
must be that there are boundaries to such body, and that the
lode exists, or if there is a continuous cavity or opening be-
tween similar or dissimilar rocks, in which ore in some quan-
tity and value is found, the lode exists.

''These propositions are correlative, and not very different
in meaning, except that the first gives prominence to the min-
eral body, and the second to the boundaries.    Proof of either
proposition goes far to establish a lode, and it may be said
that, without proof of one of them, a lode cannot exist.

''The proposition of the defendant is that the evidence be-
fore you shows that such a lode extends from the ground of
the defendant into and beneath the ground of the plaintiff, to
the point where said ore was stoped out.    The plaintiff denies
that proposition, and contends that no such vein as is above
described, or any vein at all, has been or can be traced from
the point at which said ore was stoped out to any point within
the ground of the defendant.

''A continuous body of mineral or mineral-bearing rock,

extending through loose and disjointed rock, is a lode, as fully and certainly as that which is found in more regular formation; but if it is not continuous, or is not found in a crevice or opening which is itself continuous, it cannot be called by that name. In that case it lacks the individuality and extension which is an essential quality of a lode or vein.

"And if no such vein as I have herein described can be traced in its downward course and on its dip from an apex of a vein within defendant's ground into and beneath the surface of the ground owned by plaintiff, and to the point where said ore was stoped out, then defendant had no right to enter into or beneath the surface of plaintiff's ground; and, if it did so, it was a trespasser, and your verdict should be for the plaintiff."

### INSTRUCTION 11.

"It will be observed from the foregoing instructions that the elements constituting a vein consist of boundaries and the mineral within the vein. Where both boundaries and mineral are wanting, there can be no vein; and, in determining the question of continuity, you may apply the same principle. If it becomes necessary, in order to connect two separate and distinct portions of a vein, to pass for any considerable distance through country rock, having none of the elements of a vein, and through which intervening space there are neither minerals or walls or seams to be followed, then it may be concluded that the veins are permanently separated, and one cannot be followed from the other through the intervening space into the ground of another."

### INSTRUCTION 13.

"The fact that veins unite at one point only, if the same remain separated at other portions of the vein, will not give to one owner the right to enter upon the vein of another, where such veins remain separate or apart. If, therefore, you find from the evidence that the vein belonging to the plaintiff united with the vein of the defendant at one point only, and separates therefrom without uniting at other places,

then the most that defendant can claim is the ore extracted from that part of the vein where so united, and on the dip of such union. As to all other portions of the vein not so united, unless the defendant is shown to be the owner of the apexes thereof, you must find for the plaintiff." ·

## Instruction 19.

"The west end line of the tract of ground conveyed to defendant by deeds in evidence is not parallel with the west end line of the Wappello lode claim. Under such state of facts, the defendant will be confined in following any vein on its dip, which has its apex in its ground, to a plane drawn downward vertically through the end line as described in the deed executed to it, and extended in its own direction, and not to a plane drawn downward vertically parallel to the original end line of the Wappello claim, at a point where the vein departs on its strike from the ground owned by defendant.

"Unless, therefore, you find the same barred by the statute of limitations, as hereinafter instructed, you must find a verdict for the plaintiff for the value of all ores extracted, if any, by defendant west of the west end line of defendant's ground, extended downward vertically and in its own direction to the point where such ore was extracted."

The foregoing instructions are said by defendant to be erroneous, because the court established continuity as the *sole* and *exclusive* test of the right to pursue the vein on its dip within the surface boundaries of appellant's ground, while, the question of *identity*, urged to be of infinitely more importance, was ignored.

The learned judge of the district court who tried the case granted the motion for a new trial upon the ground, among others, that under the federal statutes (Section 2322, Revised Statutes U. S.) granting ownership of veins, and giving to locators or owners of a quartz lode mining claim the exclusive right of possession and enjoyment of all the surface included within the lines of the location, and of all veins, lodes, or ledges throughout their entire depth, the top or apex of which

lies inside of said surface lines extended downward vertically, although said veins or ledges may so far depart from a perpendicular in their course downward as to extend outside of the vertical side lines of such surface location, the substantial fact to be proven by the lode claimant who seeks to pass beyond his side lines so projected is that the vein he is pursuing is the *identical* vein which has its apex within his surface boundaries, and that, if it be the *identical* vein, the fact that its *continuity* has been broken is not determinative of the lack of identity, which is the test of right in such cases. To this proposition relied upon by the defendant we shall assent, with some qualifying explanations, none of which, however, are at real variance with the charge of the judge, or conflict with the opinions of the Supreme Court of the United States, as we interpret them.

The right of an apex proprietor to pursue a vein passing from his side lines is dependent upon whether or not, as a fact, the part or mineral body of vein matter which lies outside of the perpendicular of the side lines of his surface claim is so preserved in its identity with the lode inside that it is part of the same vein, the apex of which belongs to the surface owner. The solution of this question, not infrequently arising in problems of mining litigation, is often very troublesome; and it is in formulating a charge to a jury upon the elements involved in the inquiry that judges enter upon what, some fifteen years ago, Justice Miller characterized as a "delicate task" and "a matter of extreme difficulty." (*Iron Silver Mining Co.* v. *Cheesman*, 116 U. S. 529, 6 Supreme Court 481.) Judges, under our system, can only prescribe rules of guidance with relation to general principles; they cannot exactly apply these rules, though it is in their application that half the "extreme difficulty" arises,—for the jury has its duty to be performed, and it cannot be interfered with. It is often hard, by looking at a map or model of conflicting mining locations and veins, to state principles which should control the several hypotheses presented in a case; but it is sometimes much harder to correctly ascertain the true facts,

from the testimony addressed to the model, to which the legal principles should be applied. And it will ever be difficult to get at the facts of such cases, until geologists agree upon like deductions from the complex, if not uncertain, conditions of the earth in which mineral deposits are found.

On principle, the identity of the apex of a vein with its spurs or extensions must be the crucial test by which are to be fixed the proprietary rights to that vein and the mineral therein. The full benefit of his discovery is what Section 2322, *supra*, preserves to the miner; and to meet the geologic conditions which exist in the tendency of veins to depart from a perpendicular as they go downward, that the object of the statute might be carried out, Secton 2322, Revised Statutes U. S., authorizes a miner to follow the vein on its dip to an indefinite length, wherever it goes,—provided, of course, he has the apex, and provided, further, he does not cross the vertical planes of the end lines. "The intent of the statute," said Justice De Witt in *Fitzgerald* v. *Clark*, 17 Mont. 100, 42 Pac. 273, "is to give the miner a section or block of the vein of a length on the strike which is equal to the length of the apex lying within the exterior vertical bounding planes of the location, and of a depth as far as he desires or is able to work downward; and, at the most remote depth attained, he shall have the same number of feet on the strike as he had at the apex. (*Iron Silver Mining Co.* v. *Elgin Mining & Smelting Co.*, 118 U. S. 205, 6 Supreme Court 1177.) We have always been of opinion that this is the keynote of the interpretation of Section 2322, Revised Statutes U. S.; that is to say, if the miner has the apex in his location, he is to have the vein, and he has as much length of the vein on the strike, no matter how deep he may go in the dip, as he has length of apex within his surface lines, whether that apex reaches the surface, or is found beneath the same, within the planes of his exterior boundary lines extending downward perpendicularly. This, in our opinion, is what Section 2322 says in plain language."

The pursuit of the vein on its dip being, then, the right to

be guarded, the identity of the vein pursued must be proven, to make the right availing, where it is contended the vein, after passing beyond the vertical planes drawn through the side lines of the surface boundaries of the location in which rests the apex, penetrates soil the surface of which is embraced within another location.    Identity must always exist.    Were there any departure from this rule, the miner might secure the benefit of more than he discovered, which was never contemplated by the law.    Identity in mineral deposit should have no significance not usual to identity of many other material things.    It means the same thing, or the same vein. It may be said to include a vein that is incessant.    But a vein that is incessant or identical in its parts is not necessarily a vein which is continuous, in the sense that the continuity or union of its parts is absolute and uninterrupted,—in other words, though a continuity of vein does not preclude identity of vein, yet identity does not necessarily include continuity, in the exact sense just referred to.    "Law of continuity (Math. and Physics)," says Webster's Dictionary, "the principle that nothing passes from one state to another without passing through all the intermediate states."    Speaking exactly by this definition, it would often be very difficult, if not impossible, for the challenged proprietor of a mineral vein to convince a jury of the continuity of the vein from one part to another, for there might not be continuity by actual contact of the parts or contiguity, which the precise word may literally mean must exist.    Were such a rule inexorable, a failure of proof would not infrequently be brought about by the inability of the miner to prove continuity without transition through intermediate states.    The miner therefore might fall short of that exact measure of evidence required to establish a continuity of vein which excludes any interruption between one and another part of the identical vein, and, judged by too closely interpreted significations, the continuity of the vein would be lost; yet if he prove the identity of his vein by some incessant feature, in our judgment, the right to pursue the lode on its dip is his, and there

should but remain the necessity of going to the surface limits to accurately adjudicate the lines defining the right to the vein so identified. Take, for an example of a lack of continuity, but of practical identity, a true fissure vein, lying in a section of country consisting of sedimentary and eruptive rock. The miner may encounter what he terms a "fault fissure,"—a rupture in the rocks, accompanied by a relative movement of the walls. During the readjustment of the country on either side of the fissure, masses of these walls are torn off, and, falling into the fissure, become vein filling, termed by geologists "conglomerate," "breccia," and "horse matter," as the fragments or masses of unbroken country rock found between the walls may indicate. It can be readily seen that if the fissure is found in a slate country, with intrusions of granite, the filling may consist of slate or granite, or both, while there may even be slate on one wall and granite on the other, or similar or dissimilar formations or fillings on either or the two. The mineralization of the vein — the deposition of the precious metal—occurs subsequent to the rupture only in such places between the walls as form channels or are pervious to mineral solution. Now, the miner's object is to disclose and mine the mineralized portion of the vein, and to do so economically. But he will not necessarily continue his exploitation from an initial point. He may work at numerous points on the vein, or he may drive a tunnel through extraneous rock to tap the vein at a point quite remote from his other workings. If he finds pay ore in one part of his claim, and he finds it occurring in mineralized quartz accompanying slate breccia, and in another part he finds barren granite conglomerate, he is at once confronted with a serious difficulty,—of proving the chances of a continuity by *contiguity* of deposit; but if he has developed his claim so as to prove the existence of a fissure with a certain relative movement between its walls, and he finds ore accompanied by slate breccia in the one part, and broken granite in another, if in this last-considered portion he determines that his new find practically corresponds in dip and strike with the known portions of the

fissure, and if the newly-developed walls show certain evidences, by way, perhaps, of striations or corrugation, or otherwise corresponding in dip to those determined in other portions, and the position of the newly-developed deposit occurs approximately in the plane of the fissure, he has practically identified his vein at this point, and is justified in assuming that he can follow the walls just developed, incessantly, until he connects them with the walls determined in other portions of his mine, and he may claim the lawful right to do so under the statutes of the United States.

In this discussion, however, we do not mean to exclude the need of a continuity sufficient to preserve identity. The application of the rule of identity of vein should always be made so as to require the miner to trace his lode continuously, if he depart beyond his extended side lines. There must always be in any lode that "zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock." (*Eureka Consol. Min. Co.* v. *Richmond Min. Co.*, 4 Sawy. 302, Fed. Cas. No. 4,548.) Nevertheless there may be an identical vein, although ore is found at considerable intervals and in small quantities, if the boundaries constituting the fissure are well defined. It is hard to frame any statement that will express the correct rule with the directness that marked the language of Judge Hallett in *Iron Silver Mining Co.* v. *Cheesman*, approved by the Supreme Court of the United States in 116 U. S. 529, 6 Sup. Ct. 481. He said: "The proposition of the plaintiff is that the evidence before you shows that a lode exists in the ground in controversy, as already defined. The defendants deny that proposition, and the case turns on that question. They concede that there is, in the territory open by the works, ore in detached masses or fragments, but so intermingled with the inclosing rock that it cannot be regarded as a continuous body, or as marking the line of a lode or vein. All that has been said by witnesses about rock in place is valuable only as it tends to prove or disprove the existence of a crevice or opening extending from one claim to the other. Excluding the wash, slide or debris

on the surface of the mountain, all things in the mass of the mountain are in place.   A continuous body of mineral or mineral-bearing rock, extending through loose and disjointed rocks, is a lode, as fully and certainly as that which is found in more regular formation; but if it is not continuous, or is not found in a crevice or opening which is itself continuous, it cannot be called by that name.   In that case it lacks the individuality and extension which is an essential quality of a lode or vein.   Recognizing this, the plaintiff has given evidence to establish the existence of porphyry and lime in regular order, with an opening between them filled with vein matter.''

It becomes, then, a question of fact, to be decided by the jury subject to general rules, whether there is that essential identity and continuity by which the vein can be traced through the surrounding rocks.   The Supreme Court of the United States, in *Iron Silver Mining Co.* v. *Cheesman, supra,* said:   ''Certainly the lode or vein must be continuous, in the sense that it can be traced through the surrounding rocks, though slight interruptions of the mineral-bearing rock would not be alone sufficient to destroy the identity of the vein.   Nor would a short, partial closure of the fissure have that effect, if a little further on it recurred again with mineral-bearing rock within it.   And such is the idea conveyed in the previous part of the charge.   'On the other hand,' said the judge, 'with well defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode.   Such boundaries constitute a fissure, and if in such fissure ore is found, although at *considerable* intervals and in small quantities, it is called a lode or vein.' ''

The true sense in which there must be a continuity of vein is therefore a qualified one, and not an unqualified, exact one, irrespective or independent of physical conditions found in mining.   It may be said, as a paraphrase of the decision cited, that identity is essential, and the vein must be continuous, but its continuity may be interrupted, even to a closure of the fissure, without destruction of the identity, provided the extent

of the interruptions or closure does not prevent the tracing of the lode or vein through the fissure to be identical in its parts as a geological fact. (Lindley on Mines, pp. 770, 1123; *Cheesman* v. *Shreeve*, 40 Fed. 787.)

Going directly now to instructions 9 and 10 quoted, we find that they did not establish the proposition that continuity was the *sole* test of the right to pursue the vein extralaterally, to the exclusion of identity. True, they emphasized the necessity for continuity, but that was but one phase of the right of pursuit upon which stress was laid. But that it was not established to the exclusion of the question of identity is quite apparent by examining instruction No. 8, just preceding No. 9, wherein the court asserted the following rule of law:

"Before the defendant would be entitled to follow a vein, having its apex within the defendant's ground, beyond the boundary lines, and into the ground owned by the plaintiff, it must be shown by the evidence that the vein so followed is continuous from defendant's ground into that of the plaintiff. By 'continuity' is meant such mineral or geological connection as would enable one to follow the vein along its dip, and through the obstructions, interruptions and breaks which may occur therein, with reasonable certainty that it is the same and identical vein throughout its depth, from the apex to the point or points of controversy.

By this definition of "continuity" the jury were confined within limits which required the continuity of vein to be one where the mineral or geological connection was such that, though it might be interrupted, still it must be sufficient to enable the miner to follow the dip with reasonable certainty that the vein, though obstructed or interrupted, is the *same* and *identical* vein throughout its depth from the top to the point in controversy. This definition of a "continuous vein" was not excepted to; nor is it adverted to by the defendant's counsel in his brief; but it seems to us to have been a most important instruction,—one upon which the jury were authorized to proceed, holding always, however, to the need not only of a continuous vein in the sense approved of by the

supreme court of the United States, and by ourselves herein, but that it must be so continuous as to demonstrate that it is the *identical* vein from the apex down.     Thus, the court appears to have based its instructions upon a premise of the requirement of identity; and mere omission to not direct the jury more fully upon every phase of the case presenting the relation of identity was not error, appropriate complimentary instructions not having been requested and refused.    (Thompson on Trials, sections 2346, 2328.)

The respondent particularly objects to that portion of instruction 11 where the court said that "if it becomes necessary, in order to connect two separate and distinct portions of a vein, to pass for any considerable distance through country rock, having none of the elements of a vein, and through which intervening space there are neither minerals or walls or seams to be followed, then it may be concluded that the veins are permanently separated, and one cannot be followed from the other through the intervening space into the ground of another."    It is argued that by this sentence the court, while admitting that the two detached portions were parts of the same vein, "virtually told the jury that they could not be followed on the dip."    The right of a jury to draw its own conclusions of fact from the evidence before them is elementary, under the practice of this state.    Hence we agree that the court must avoid language which "virtually" decides facts, and withdraws their determination from the consideration of the jury; but we cannot think there was fatal error in telling them they might conclude that the veins were permanently separated where every one of the conditions enumerated in the hypothesis was found to exist as a proven fact, for the combination fairly excluded all reasonable chance for a continuance and identity of vein.    The instruction ought to have been slightly modified, so as to avoid any possible danger of implying an opinion of the judge that there was no need of identity, and it would be well to revise it on another trial; but we are not satisfied that it was objectionable to the extent of having been prejudicial.    In defining matters calling

for definition, a court may certainly put before a jury the prerequisites necessary to be proven before a certain condition can exist, provided it is left to the jury to decide the question of fact involved in each prerequisite, and provided they are not told that they *must* deduce any certain conclusion from the facts if found to be true.

It is also contended that the word "considerable" was meaningless, as used, and was only calculated to confuse the jury. To support this reasoning, the case of *Stevens* v. *Williams*, 1 Morr. Min. Rep. 566, Fed. Cas. No. 13,413 is referred to. In that case, under the evidence, which was treated as uncontradicted, the judge refused to use a similar term because it conveyed no accurate conception of the extent to which a vein might be interrupted, yet not cease to be a lode or vein upon which a miner had a right to pursue it into the adjoining land. Doubtless, under the facts of the case, considering the practice which obtains in the federal courts, where judges have a right to comment upon matters in evidence, that truly great judge (Miller), who refused to so charge, was correct in regarding the term "considerable" as too indefinite and as unwarranted by the evidence; but that he did not afterwards look upon it as generally too vague a term, when used in a charge substantially like that under consideration in the case at bar, is made plain by his express approval of its use by Judge Hallett in the *Iron Silver Mining Co.* v. *Cheesman* case, heretofore referred to, where, as the organ of the supreme court, he quoted Judge Hallett's statement that what is called a "vein" or "lode" exists where boundaries, as defined in the opinion, are found, constituting a fissure, and where in such fissure ore is found, "although at *considerable intervals and in small quantities.*" As part of an oft-given definition, therefore, it was not unfitting,—surely not inaccurate,—when considered with the previous instructions, which, as far as they went, set before the jury the law, and qualified the definition by explaining what continuity of vein gives the miner a right to pursue it on its dip and extralaterally.

The only objection urged by respondent to instruction 13 is

that in it the court assumed the existence of a fact in controversy, namely, that plaintiff had a vein which united with defendant's vein.     Inasmuch as defendant denied the existence of any vein in plaintiff's ground which united with the vein in dispute, the court, upon retrial, should avoid reference to "the" vein, and thus obviate the criticism applied to the instruction as framed.

Appellant says the court erred in granting a new trial because of error in instruction 19, *supra.* As said before, plaintiff and defendant are owners of different portions of the Wappello mining claim, and derive title from the same source. It will be observed, too, that the west end line of the Wappello, as located, is not parallel with the west end line of the tract conveyed to defendant.     The deed to the plaintiff from A. J. Davis was also subsequent to his deed to defendant's grantors, and was made subject to the conditions and grants of the deed to the defendant's grantors.     It will be seen that the instruction under examination confined the defendant, in following a vein on its dip, to a plane drawn downward vertically through the end line as *described in the deed* from Davis to defendant's grantors, extended in its own direction, and forbid the right to a plane drawn downward vertically parallel to the *original end line* of the Wappello, at a point where the vein on its strike leaves the ground owned by the defendant. The judge of the trial court, when he granted a new trial, was of the opinion that under such circumstances defendant's grantors made their grant in view of the mineral character of the land conveyed, and did not except from it any of the mineral rights which theretofore existed in, or attached to, the portion thereby conveyed, and for this reason he regarded the instruction given as manifestly wrong.     On this question the court was asked, but refused, to charge as follows:     "If the jury believe from the evidence that the ore in controversy in this action, and which was taken by defendant from the Lexington stopes, beneath the surface of that portion of the Wappello claim owned by plaintiff, was taken from a vein or veins which have their top or apex north of the dividing line be-

tween the Butte & Boston portion of the Wappello and the Lexington portion of the Wappello, and within the surface lines extended downward vertically of said Lexington portion of said Wappello claim, and from between vertical planes drawn downward at the surface, one through the easterly end line of the Wappello claim location, and the other through a line parallel to said easterly end line and also to the westerly end line of said location, at a point where such vein or veins having their top or apex within the surface lines extended downward vertically of said Lexington portion of said Wappello claim departs on its course or strike from the west surface end line of said Lexington portion of said Wappello claim, so continued in their own direction that such planes will intersect such exterior parts of such vein or veins, then and in such case said ore was the property of defendant, and it had a right to extract the same, and plaintiff cannot recover damages therefor, and the jury will find for the defendant."

By its refusal to give the charge requested, and by having given instruction 19, there arises the important question of whether, under certain conditions as presented herein, a miner must follow along a plane of the end line of the claim drawn down at the point of departure of the vein from the *conveyed* premises, or must follow the plane of the end line of the conveyed premises which may cross the vein. We approach the solution of this matter at this time with extreme hesitation, for the reason that the counsel for appellant, at whose request instruction 19 was given, candidly says in his brief that "he never believed the doctrine announced in the instruction [given] to be a correct one," but that, as the question was an open one, it could only be preserved for review by asking the court to charge as it did in said instruction 19. The court is therefore somewhat embarrassed by being asked to determine a vexed and difficult matter, where counsel for both sides, for whose proficiency and learning upon the law of mining we entertain the highest respect, and the judge who granted a new trial, agree that the court, by instruction 19, incorrectly

stated the law to the jury.   It would certainly save some con-
fusion to hold to the rule, upheld by counsel and  court,  that
the end line of a claim should determine the limits on the  dip
of the vein taken at any point along the vein,  so that a  pur-
chaser of a portion of a claim would acquire  so much of a
vein on its dip as he has apex at the surface, the limits on the
dip of the vein to be fixed by the course of the true end lines
of the claim from which the portion was conveyed; and such
a holding would harmonize with the principle of saving to the
miner the right to follow the dip wherever it goes,  if  he has
the apex, and keeps within  prescribed vertical planes.    But
in a recent decision by Judge De Haven (*Boston & M. Consol.
Copper & Silver Min. Co.* v. *Montana  Ore-Purchasing  Co.*,
89 Fed. 529) a contrary rule was laid down, and  support for
it put in the cases of *Richmond Min.  Co.* v. *Eureka Min.
Co.*, 103 U. S. 839, and *Stinchfield* v.  *Gillis*, 107 Cal. 86,
40 Pac. 98.   We hardly think the last case went as far as
Judge De Haven did,  although  the opinion states,  in  part,
that "if the proprietor of a tract of mining ground, which has
been derived through several locations,  should dispose of the
same in parcels irrespective of the lines of such  locations, the
rights of his guarantees would be measured by  the  terms of
their deeds."   Nor does the opinion of the supreme court of
the United States in *Richmond Min.  Co.* v. *Eureka Min.  Co.*,
*supra*, fully sustain the federal case cited; for the facts re-
lieved the court of the necessity for considering what, if any,
presumptions attach to the grant of  a  conveyance of  a part
of a patented mining claim.    As a decision upon the point is
not necessary, owing to the condition of the  record,  and con-
sidering the concurrent views of counsel for  both  sides,  we
prefer to reserve the question until it shall come before us  in
some instance wherein the doctrine of  the  federal court is
submitted to us with the  earnest  support of  counsel as the
true and correct rule of law, and not with a conviction  of its
inaccuracy.

It is urged that, even though instruction 19 was erroneous,
it became unimportant, in the light of the finding by the jury

that the vein in question was entirely south of the dividing line between the Wappello and Lexington, and all belonged to the plaintiff; but, as the order granting a new trial must be affirmed on other grounds, it would serve no purpose to examine the finding and the evidence bearing upon it to see if the instruction was correct.

Finally, appellant insists that the court ought not to have granted a new trial because, as counsel puts it, ''not satisfied with the verdict of the jury.'' This expression is the deduction of counsel from the opinion delivered by the district judge when he made the order granting the defendant's motion for a new trial, copy of which is in the transcript. The order of the court was as follows: ''This day the motion herein for a new trial is by the court sustained, to which ruling plaintiff by counsel duly excepts.'' ''The opinion is not part of the record, and cannot be resorted to for the purpose of adding to the order sought to be reviewed. (*Menard* v. *Montana Central Railway Co.*, 22 Mont. 340, 56 Pac. 592.) This being true, and the court not having made an order explicitly excluding the ground that the evidence was insufficient to justify the verdict, and the record showing a substantial conflict in the evidence, this Court must affirm the order as made within the sound discretion of the trial court.

We will add, however, that as counsel for both sides seem to have made their briefs upon the assumption that the old practice of making the opinion of the district judge part of the record still obtains, we have carefully read it and considered it, as an aid to the decision herein, and are still of the opinion that the fair inferences to be drawn from the reasoning of the trial judge are that he believed there was an insufficiency of the evidence to justify the verdict, which was one of the grounds specified in the motion for a new trial made by the defendant. It therefore followed from that belief that the judge was justified in granting the motion (*Patten* v. *Hyde*, 23 Mont. 23, 57 Pac. 407); and it now further follows that the order must be here sustained. It is so ordered.

*Affirmed.*