ST. ANTHONY MINING AND MILLING COMPANY, Respondent, vs. SHAFFRA and another, Appellants.

*February 20—March 9, 1909.*

*Mining rights under license or lease: Revocation: Statute construed: "Crevice or range:" "Discovery:" Presumptions: Notice to quit: Immaterial defects.*

1. The words "crevice or range" in sec. 1647, Stats. (1898), are equivalent to "lode or vein," the word "range" being limited by its associated word, "crevice," which has been defined to mean a mineral-bearing vein.
2. Under sec. 1647, Stats. (1898), a miner entering upon land under a mere license or lease, revocable at the will of the lessor or licensor, has the right, if he strikes a prospect, to continue his exploration sufficiently to determine whether it will lead to a discovery or not; and if he discovers a crevice or vein he may follow that deposit of ore, within the lines of the land upon which he was licensed to work, lengthwise, sidewise, and downward until he has exhausted the crevice or vein; and the landowner cannot in the meantime revoke the license or lease unless the miner forfeits his right as provided in secs. 1647, 1649.
3. The word "discovery" in such statute must have a reasonably strict construction.
4. The evidence in this case is *held* not to show "the discovery of a crevice or range," within the meaning of sec. 1647, Stats. (1898), but merely the development and uncovering of a pocket or deposit of zinc ores near old workings and being part of the same mineralized band or zone running through a known mineral-bearing lot.
5. If, from long-continued possession and working of land for mining purposes by licensees and those claiming under them, it could in any case be presumed that there had been a discovery of a crevice or range and that they were in possession pursuant

thereto, the evidence in this case as to the known mineral-bearing character of the land, the old workings theretofore discontinued, and the miners' description of the land and of their operations thereon, negative such presumption.

6. Where the answer in ejectment claimed that defendants had an irrevocable mining license and denied plaintiff's title to the ore and its right of possession, formal defects, if any, in a notice to quit given to the defendants, but not before the court on appeal, are not available to reverse a judgment for the plaintiff.

APPEAL from a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Platt Whitman* and *Aldro Jenks,* and oral argument by *Mr. Jenks.* They cited, among other authorities, *Ill. S. Co. v. Jeka,* 119 Wis. 122, 95 N. W. 97; sec. 1647, Stats. (1898); *Sobey v. Thomas,* 39 Wis. 317; *Book v. Justice M. Co.* 58 Fed. 106; *Cascaden v. Bartolis,* 146 Fed. 739; *Lange v. Robinson,* 148 Fed. 799; *Tipping v. Robbins,* 71 Wis. 507, 37 N. W. 427.

*George B. Clementson,* for the respondent, cited *Ganter v. Atkinson,* 35 Wis. 48; *De Pere Co. v. Reynen,* 65 Wis. 271, 22 N. W. 761, 27 N. W. 155; *Furlong v. Garrett,* 44 Wis. 111; *Sydnor v. Palmer,* 29 Wis. 226; *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720; *Raisbeck v. Anthony,* 73 Wis. 572, 41 N. W. 72.

TIMLIN, J. The appellants claim to be entitled to the possession for mining purposes of two lots designated respectively, for convenience, as the Delaney lot and the Stephenson lot, and base that claim upon a parol license from the former owners of these lands to some remote predecessors in occupation under whom appellants claim by relinquishments, parol transfers, and succession in occupation and use for more than twenty years next prior to the commencement of the action. During all this time the appellants and their said predecessors in occupation, by payment of tribute, royalty, or rent, consisting of a fraction of the ore mined or raised, recog-

nized the paramount title of the owners in fee, and they now recognize such paramount title, but claim that under ch. 75, Stats. (1898), formerly ch. 260, Laws of 1860, and ch. 117, Laws of 1872, they have acquired a right to hold and enjoy the possession of said lots for the purpose of mining thereon upon payment of tribute or royalty to the fee owners, and that the lapse of time has prescribed any remedy of the fee owners to treat them otherwise than as such possessors. Some criticism is made upon the fee title of the respondent, but we are assured by appellants' brief that they make this criticism merely for the purpose of challenging the sufficiency of the notice to quit served upon them by respondent, and do not wish otherwise to deny that the respondent is the owner of the title in fee subject to appellants' rights as licensees for the purpose of mining and removing the ore. We shall therefore take it for granted that the respondent has title in fee to the lots in question.

Ch. 75, Stats. (1898), is in many respects a very peculiar statute, and its provisions, as well as its peculiar use of mining terms, indicate a local origin. It applies only to mining contracts and leases for the digging of ores and minerals, viz.: (1) licenses or leases "verbal" or written made to a miner; (2) only where there is no contract between the parties contrary to its provisions; (3) only where there are no terms established by the landlord contrary to its provisions. The class of contracts affected is consequently very narrow. But with regard to a contract which does fall within its provisions the latter are quite sweeping. Such lease or license as does fall within the purview of the statute shall not be revocable by the maker thereof (1) after a valuable discovery has been struck; (2) after a valuable prospect has been struck; (3) but if the miner shall forfeit his rights by negligence such as establishes a forfeiture according to mining usages, then the "maker" of the lease or license may revoke it notwithstanding a valuable discovery or a prospect "has been

struck." This appears to permit revocation after discovery for a particular cause, but whether or not the cause exists is to be determined by proof of mining usages. Sec. 1649, Stats. (1898), provides, however, other causes for forfeiture of such license or lease after discovery, viz.: (1) concealing or disposing of ores or minerals, or (2) concealing or disposing of "mines or diggings" for the purpose of defrauding the lessor of his rent, and (3) neglect for three days after notice and claim of rent to pay rent on ores or minerals "raised" by the tenant or licensee. Having thus fixed the legal effect of the class of licenses and leases above described with reference to possessory rights, the statute further declares, "the discovery of a crevice or range containing ores or minerals shall entitle the discoverer to the ores or minerals pertaining thereto, subject to the rent due his landlord, before as well as after the ores or minerals are separated from the freehold." The words "crevice or range" are probably here used with some local significance, because the word "range" as applied to mineral deposits is commonly understood to designate a large stretch of country, often many miles in length and of considerable width, carrying with some continuity or at intervals ore deposits belonging generally to the same geological stratum. A "crevice," on the other hand, is a word sometimes applied to a mineral-bearing vein. In *Raisbeck v. Anthony,* 73 Wis. 572, 586, 41 N. W. 72, these two words were considered to be equivalent to the expression "lode or vein," thus limiting the word "range" by its associated word, "crevice," which latter word has been defined to mean mineral-bearing vein. *Beals v. Cone,* 27 Colo. 473, 62 Pac. 948, 958; *Van Zandt v. Argentine M. Co.* 8 Fed. 725; *Terrible M. Co. v. Argentine M. Co.* 89 Fed. 583. It is somewhat questionable whether this construction of the words "crevice or range" is the most appropriate to the conditions existing in the lead and zinc mining regions of Wisconsin, because such mineral deposits might not be aptly described in that way. Wis. Survey Bull. No. 9,

Lead and Zinc Deposits (1903). But the construction thus placed upon the statute has stood for twenty years and we do not feel authorized to change it.

The purpose of the statute seems to be to give the miner who is operating under a lease or license from the owner of the land, terminable at the will of the latter, the right, in case he discovered a prospect, to continue his exploration free from any right of the lessor or licensor to cut him off by revocation before the prospect so discovered was explored sufficiently to determine whether it would lead to a discovery or not, and in case he discovered a crevice or vein to entitle him to follow · that deposit of ore within the lines of the land upon which he was licensed to work lengthwise, sidewise, and downward until he had exhausted the crevice or vein, paying the agreed or customary tribute or royalty to the landowner in the meantime. Thus a miner entering under a mere license or lease, revocable at the will of the lessor or licensor, by discovery became entitled to all the rights which he would have, had the license or lease in the first place had incorporated into it the terms of this statute.

Under such a statute the word "discovery" must in the interest of certainty of titles have a reasonably strict construction. In *Raisbeck v. Anthony, supra,* it was held that the location of a new deposit of ore further along the vein and in the direction of the extension of an exhausted deposit and between the same rock walls was a continuation and expansion of the same vein, which had pinched out where the former workings were abandoned, and not the discovery of a crevice or range within the meaning of this statute. That was rather a stronger case for the licensee than the case at bar, and if that case be accepted as law the defendants in this case have not brought themselves within the statute. For, as we view the evidence, the lots in question were known mineral ground and had been worked and mined long prior to the inception of defendants' license. The defendants or their predecessors in

occupation uncovered and raised some ores of zinc called "dry bone" and "jack" which were valuable and marketable, but the evidence leads us to believe, as it led the circuit court to believe, that this was the development and uncovering of a mineral deposit in a known mineral-bearing lot and alongside of the old lead diggings, rather than a discovery of a crevice or range, vein or lode. They do not bring their act of uncovering or disclosing this deposit within the proper meaning of the word "discovery" as used in this statute, nor do they bring that which they uncovered and disclosed within the meaning of the words "crevice or range." The evidence rather shows it to be a pocket or deposit some distance from the old workings, but part of the same mineralized band or zone running through these mineral-bearing lots. In one sense of the word it was a discovery that the particular ore was at that identical spot and not elsewhere, but it was not the discovery of a crevice or range.

With reference to appellants' claim that by reason of long-continued possession for mining purposes by them and by those under whom they claim the court should presume that there had been a discovery of a crevice or range and that they were in possession pursuant to that discovery, not yet having exhausted the crevice or range, we must say that the evidence as we understand it negatives such a claim. The known mineral-bearing character of the land, the old workings theretofore discontinued or abandoned, and the appellants' description of the land and their operations thereon and the deposit uncovered negative such presumption, if we were permitted to indulge such presumption in any case. We may add that it is quite difficult to fit a presumption of this kind to a statute which gives possession for a limited time and only for the purpose of mining out a certain crevice and dependent upon practically continuous mining and payment of rent. But it may not be impossible in a proper case.

With reference to the notice to quit or revocation of appel-

lants' license, we have no copy of the same before us, and the fact that such notice was given appears only by testimony of the defendants elicited upon cross-examination. The answer of defendants claimed an irrevocable license by reason of the discovery of a crevice or range by their predecessors and denied the respondent's title to the ore and its right of possession. Formal defects in the notice to quit, if such existed, were under these circumstances not available to the appellants for the purpose of reversing the judgment.

*By the Court.*—The judgment of the circuit court is affirmed.