CLARENCE D. ROBINSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7398.    Promulgated October 11, 1927.

> In the development of a coal mine acquired subsequent to March 1, 1913, the petitioner found after carrying on mining operations that the coal deposit was more valuable than was known to exist at the date of purchase. *Held,* that the petitioner is not entitled to revalue the estimated coal content and to base a depletion deduction upon such enhanced value rather than on the cost.

*Leon F. Cooper, Esq., R. F. Garrity, Esq., F. J. Neuland, Esq.,* and *R. E. Glessner, Esq.,* for the petitioner.
*Arthur H. Fast, Esq.,* and *Julian G. Gibbs, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits tax for the years 1917 and 1918 of $21,644.12 and $6,763.34, respectively. The question in issue is the right of the petitioner to deduct from gross income an allowance for depletion based on a discovery value in excess of cost.

FINDINGS OF FACT.

The petitioner on November 27, 1915, acquired title by purchase to a certain coal mine known as the "Davis Mine," located near Flemington, Taylor County, W. Va. The purchase price was $35,000, and included approximately 28 dwellings, 75 mine cars, 9 head of live stock, and certain other equipment necessary to operating a mine. By the purchase the petitioner acquired about 124 acres of surface land and mining rights in 326.46 acres.

At the time of purchase the mine was being operated to a small extent and had been operated for 15 years. The entire tract of land was underlaid by the Pittsburgh seam of coal. This is a well defined seam of coal in this section, in some places being 8 feet thick. In other places the seam contains faults and is mixed with veins of stone, clay, and sand. The predecessor owner, in the development of the mine, had run into these faults and because of the low prices at which coal was selling had operated to only a limited extent. As soon as the petitioner acquired the property and after he had made some inspections of the mine he determined to develop the mine along the easterly side and also along the westerly side in order to avoid some of the faults which had been encountered by the predecessor owner. A tramway was carried along the eastern side of the tract and certain pockets of coal were removed. In February, 1916, the petitioner acquired a tract from one Bartlett, consisting of approximately 4 acres immediately adjacent on the eastern side of the Davis Mine at the purchase price of $300 per acre. Some time in 1918, the exact date not being shown, he acquired a further tract from one Lawson, immediately adjacent on the westerly side, paying therefor approximately $1,500 per acre. He had theretofore mined coal from the Lawson tract. The reason that title was not acquired earlier was because the property was in litigation.

The developments carried on by the petitioner on the easterly and westerly sides of the Davis Mine showed that the seam of coal improved as the mine deepened. By April, 1916, the developments showed that the 80 acres of land on the back side of the property were much more valuable than the part of the seam which had been mined by the predecessor owner.

Within one month after the petitioner purchased the Davis Mine he was offered $200,000 for it.

The number of tons of coal removed from the mine during the years 1915 to 1918, inclusive, were as follows:

|  | Tons. |
|---|---|
| 1915 | 3, 851 |
| 1916 | 60, 548 |
| 1917 | 43, 585 |
| 1918 | 46, 822. |

The operation of the mine continued up to about 1923, when operations were discontinued for a period of 2 or 3 years.

## OPINION.

SMITH: The petitioner alleges error on the part of the respondent in determining deficiencies in income and profits tax for the years

11340°—28——52

1917 and 1918 on the ground that he has refused to allow a discovery value as a basis for computing depletion.

The Revenue Act of 1916 permits an individual to deduct from gross income in his income-tax return, under subdivision eighth of section 5 thereof, the following:

\* \* \* (b) in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof, which has been mined and sold during the year for which the return and computation are made, such reasonable allowance to be made in the case of both (a) and (b) under rules and regulations to be prescribed by the Secretary of the Treasury: \* \* \*

Section 214(a) of the Revenue Act of 1918 permits the deduction from gross income in income-tax returns of the following:

(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: \* \* \* Provided \* \* \* That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary.

Article 219 of Regulations 45, prescribed by the Commissioner with the approval of the Secretary pursuant to the above authority, reads in part as follows:

(b) For the purpose of these sections of the Act a mine may be said to be discovered when (1) there is found a natural deposit of mineral, or (2) there is disclosed by drilling or exploration, conducted above or below ground, a mineral deposit not previously known to exist and so improbable that it had not been, and could not have been, included in any previous valuation for the purpose of depletion, and which in either case exists in quantity and grade sufficient to justify commercial exploitation. The discovery must add a new mine to those previously known to exist and can not be made within a proven tract or lease as defined in paragraph (f) infra.

(c) In determining whether a discovery entitling the taxpayer to a valuation has been made, the Commissioner will take into account the peculiar conditions of each case; but no discovery, for the purposes of valuation, can be allowed, as to ores or minerals, such as extensions of known ore bodies, that have been or should have been included in "probable" or "prospective" ore or mineral, or in any other way comprehended in a prior valuation, nor as of a date subsequent to that when, in fact, discovery was evident, when delay by the taxpayer in making claim therefore has resulted or will result in excess allowances for depletion.

(f) In the case of a mine, a "proven tract or lease" includes, but is not necessarily limited to, the mineral deposits known to exist in any known mine at the date as of which such mine was valued for purposes of depletion, and

all extensions thereof, including "probable" and "prospective" ores considered as a factor in the determination of the value or cost.

It is the contention of the petitioner that the common understanding of mining men in the particular locality of the Davis Mine in November and December, 1915, was that some coal might remain in the mine but that the conditions found in it made it doubtful and as to how much and as to the quality; that by exploring the property, necessitating going through tracts adjacent on both sides of it in order to get around and behind rock, faults, etc., he came upon and discovered approximately 80 acres of coal. This discovery of coal occurred in April, 1916; that the value of the 80 acres of coal was $300 per acre, and that in computing the amount of depletion deductible from gross income the respondent has erred in not allowing any "discovery" value in respect to this 80-acre tract. He argues that section 214(a)(10) of the Revenue Act of 1918 refers to "purchase *of* a proven tract" and not "purchase *in* a proven tract"; that there is a great difference between the terms and that the use in the statute of the word "of" is important in this case.

It will be noted from a reference to the provision of the statute last above referred to that the depletion allowance shall be based upon the fair market value of the property at the date of the discovery or within 30 days thereafter "in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and *not acquired as the result of the purchase of a proven tract or lease."* (Italics ours.)

An examination of the reports of the hearings held before the Committees of Congress and also an examination of the Congressional Record prior to the approval of the Revenue Act of 1918, fails to reveal any reference to the specific subject of depletion based upon "discovery" value as provided by the last provision of section 214(a)(10) of the Revenue Act of 1918. There were numerous hearings bearing on the general subject of depletion as relates to oil and gas wells and zinc mines, by various interests appearing before the Congressional committees, but none of them bear upon the specific subject of depletion based on a "discovery" value. (See "Hearings, Briefs and Statements, Revenue Acts of October 3, 1917, and February 24, 1919," at pages 172, 176, 370, 388, 476, 580, and 584.) A brief reference was made to the subject by Senator Penrose in submitting the minority report in the Senate, as appears on page 549 of the Congressional Record of December 17, 1918. This, although interesting, is not helpful in arriving at a definition of the term "discovery."

The first draft of H. R. 12863, the proposed revenue bill of 1918, did not contain a provision for the specific subject of depletion based

upon "discovery value." The Committee on Finance, by an amendment of section 214(a)(10), inserted the provision for depletion based upon "discovery" value (Congressional Record of December 11, 1918, page 297). This section in the amended form as above stated, was agreed to without debate in the Senate on December 17, 1918, as appears on page 554 of the Congressional Record of that date. It was finally approved in this form with the exception that the period of 12 months was changed to 30 days.

By reference to page 801 of the Congressional Record of December 23, 1918, it will be seen that Senator LaFollette's proposed amendment to the Revenue Bill of 1918 did not include a provision for depletion based on "discovery" value. It did, however, provide for depletion according to the "peculiar conditions in each case." This feature of the bill was discussed by the Senate, as appears on page 829 of the Congressional Record of December 27, 1918. Incidentally, before final approval of the Act, comments on the operation of the provision for depletion based upon "discovery" value were made by the Honorable Claude Kitchen of North Carolina in his speech in the House on February 8, 1919.

These hearings before the committees and references to the subject in the Congressional Record, hereinbefore referred to, are helpful in arriving at what Congress evidently had in mind by inserting the following clauses into section 214(a)(10) of the taxing act:

*According to the peculiar conditions in each case  * * ***

and—

*  * * * Such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary.*

The term "discovery" is defined in Webster's Dictionary as a "revelation; a disclosure; a finding out or ascertaining of something previously unknown or unrecognized." In *Mason* v. *Mining Co.* (C. C. A.), 214 Fed. 32, 35, discovery within the meaning of the United States statutes governing the location of mining claims on the public domain is defined as the "acquirement of knowledge that a vein or lode exists within the limits of the claim." The statement of the court in *Grand Central Mining Co.* v. *Mining Co.* (Utah), 83 Pac. 648, 677, appears to be equally applicable to the discovery provisions of the revenue acts, i. e., "It is the object and policy of the law to encourage the prospector and miner in their efforts to discover the hidden treasures of the mountains." In *Garibaldi* v. *Grillo* (Cal. App.) 120 Pac. 425, 426, it is stated with reference to the location of mining claims that "no arbitrary rule as to

what will constitute a sufficient discovery can be stated which will govern in all cases * * *. And hence whether a discovery has been made is a question of fact for the jury to determine, under the guidance of the Court. The United States Statute does not prescribe what is necessary to constitute a discovery." See *Brownfield* v. *Bier* (Mont.), 39 Pac. 461, 462; and *Iron, etc. Company* v. *Mike & Starr Co.*, 143 U. S. 394, 405. A reference to the numerous cases wherein the courts have discussed the nature of a vein or lode for purposes of the discovery provisions of the statutes governing the location of mining claims and the various attempts therein to define such vein or lode will be of some aid in the consideration of the nature of a coal vein for purposes of section 214 (a) (10) of the 1918 Act. In *Mining Co.* v. *Cheeseman*, 116 U. S. 529, 536, the court said " it is enough to say that a lode or vein is a body of mineral or mineral-bearing rock, within defined boundaries in the general mass of the mountain." The court also quoted with approval (p. 533) from the *Eureka* case, Fed. Cas. No. 4548, where it is stated that a vein or lode " is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock." See *Fitzgerald* v. *Clark* (Mont.) 42 Pac. 273; 30 L. R. A. 803; 52 Am. St. Rep. 665; *Cheeseman* v. *Shreve*, 40 Fed. 787; *Hyman* v. *Wheeler*, 29 Fed. 347; and Lindley on Mines (3d ed.) section 336. For a general discussion as to the law governing the acquisition and development of coal lands, see Lindley on Mines, ch. V. See also *Reed* v. *Nelson*, 29 Land Dec. 615, 619.

The case of *St. Anthony Mining & Mill Co.* v. *Shaffra* (Wis.) 120 N. W. 238, is of particular interest to the question under consideration. There the court had under consideration the meaning of discovery as used in the State statute relating to the discovery of ores or minerals. The court held, as stated in paragraph 5 of the syllabus, that the development and uncovering of a mineral deposit in a known mineral-bearing lot and alongside of the old workings which had existed long prior to the inception of defendants' license from the land owner did not constitute a discovery within the meaning of the State statute. In the course of the opinion the court used the following language (p. 240):

In *Raisbeck* v. *Anthony*, *supra* (73 Wisc. 572, 586, 41 N. W. 72), it was held that the location of a new deposit of ore further along the vein and in the direction of the extension of an exhausted deposit and between the same rock walls was a continuation and expansion of the same vein, which has pinched out where the former workings were abandoned, and not the discovery of a crevice or range within the meaning of the statute. That was rather a stronger case for the licensee than the case at bar, and if that case be accepted as law the defendants in this case have not brought themselves within the statute. For, as we view the evidence, the lots in question were known mineral ground

and had been worked and mined long prior to the inception of the defendants' license. The defendants or their predecessors in occupation uncovered and raised some ores of zinc called " dry bone " and " Jack " which were valuable and marketable, but the evidence leads us to believe as it led the circuit court to believe, that this was rather the development and uncovering of a mineral deposit in a known mineral-bearing lot and alongside of the old lead diggings rather than a discovery of a crevice or range, vein or lode. They do not bring their act of uncovering or disclosing this deposit within the meaning of the word " discovery " as used in this statute, nor do they bring that which they uncovered and disclosed within the meaning of the words " crevice or range." The evidence rather shows it to be a pocket or deposit some distance from the old workings, but part of the same mineralized band or zone running through these mineral-bearing lots. In one sense of the word it was a discovery that the particular ore was at that identical spot and not elsewhere, but it was not the discovery of a crevice or range. With reference to appellants' claim that by reason of long-continued possession for mining purposes by them and by those under whom they claim the court should presume that there had been a discovery of a crevice or range, and that they were in possession pursuant to that discovery, not yet having exhausted the crevice or range, we must say that the evidence as we understand it negatives such a claim. The known mineral-bearing character of the land, the old workings theretofore discontinued or abandoned, and the appellants' description of the land and their operations thereon and the deposit uncovered negatives such presumption, if we were permitted to indulge such presumption in any case.

The petitioner has attempted through the witness, John F. Phillips, to establish that a generally accepted definition of the term " discovery " among coal men in the vicinity of petitioner's mine is different from the meaning of that term as understood by the courts in the cases cited above. We are of the opinion, however, that the term as used in the taxing statute must be given the same general connotation as has been given to it by the courts in the above cited cases.

The evidence is so convincing in the case that there was no " discovery " of a new ore body within the meaning of the statute and the regulations interpreting them, prescribed by the Commissioner with the approval of the Secretary, that we think it is unnecessary to consider the evidence in detail. J. F. Phillips, one of the witnesses for the petitioner, testified as follows:

Q. Would you then think that you could testify or swear that the Pittsburg seam undoubtedly was underlying that mine?

A. Not the whole of it, in fact I know a good bit about the country. I own considerable coal above that and know it was faulty.

Q. You couldn't say it was there, that the Pittsburg seam was under that property?

A. The surface told you that.

Q. That the Pittsburg seam was under there?

A. That the Pittsburg seam was under that hill because the outcrop was on all sides of that hill and country coal banks.

Q. So you think it would be possible for a man to make a discovery of coal in that property?

A. I know it would, there has been considerable coal discovered where they thought it was rock.

Q. What do you understand to be meant by the term "discovery"?

A. In other words, they didn't think they had the coal and afterwards discovered they had when they thought they hadn't, in fact we have the same thing right across the railroad track.

In our opinion a person who purchases a coal mine located on a proven seam of coal and through mining operations finds that the mine is more valuable than he first supposed does not make a "discovery" of coal within the meaning of section 214(a) (10) of the Revenue Act of 1918. Furthermore, there is no basis whatever for a claim for depletion upon a "discovery" value for 1917, since the taxing act in effect for that year makes no provision for a deduction for depletion based on a "discovery" value.

*Judgment will be entered for the respondent.*

Considered by LITTLETON and LOVE.